In re INTERMAGNETICS AMERICA, INC., Intermagnetics Engineering, Inc.; American Video Tape Manufacturing Co.; Magnetic Tape International; Intermagnetics International Sales Corp.; Amex Export, Inc., Debtors.

In re Amarjit Singh ANAND, an individual, fdba Agra Enterprises, Debtor.

Leonard L. GUMPORT, Chapter 11 Trustee of the Estates of Debtors Intermagnetics America, Inc., Intermagnetics Engineering, Inc., American Video Tape Manufacturing Co., Intermagnetics International Sales Corporation, Amex Export, Inc., and Amarjit Singh Anand fdba Agra Enterprises, Plaintiff,

v.

CHINA INTERNATIONAL TRUST AND INVESTMENT CORPORATION, a commercial enterprise of the People's Republic of China, Defendant.

No. CV 89-549 PAR.

Bankruptcy Nos. LA 84-9208 JD, LA 84-9206 JD, LA 84-9203 JD, LA 84-9209 JD, LA 84-9201 JD, LA 84-9210 JD and LA 86-18220 JD.

United States District Court, C.D. California.

June 1, 1989.

Michael R. Tyler, Paul Presburger, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for plaintiff.

Jeffrey C. Coyne, Coudert Bros., Los Angeles, Cal., David A. Ranheim, Dorsey & Whitney, Minneapolis, Minn., for defendant.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

Ex parte applications have reached epidemic proportions in the Central District. One was filed in this adversary action for an order to show cause why sanctions should not be imposed against defendant and its attorneys for submitting an allegedly false declaration in support of objec-

tions to a jurisdictional statement. It is being denied as procedurally improper. Given the tremendous increase in the number of such applications over the past several years, it is appropriate to set forth, in some detail, the reasons why they are nearly always improper.[1]

First, ex parte proceedings pose a threat to the adversary system. By allowing both sides to have their say, the adversary system promotes accuracy, fairness, and consistency—the hallmarks of our system of justice. That is not to say that "[a]dversary proceedings will ... magically eliminate all error," see *Alderman v. United States*, 394 U.S. 165, 184, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), unfairness, or inconsistency. But, when one side proceeds ex parte, the risk of such dangers inevitably is compounded.

Second, ex parte contacts with the court pose ethical problems for both the bench and bar. Few would dispute that, as a rule, parties to a case should not communicate with the court except by notice to the other side. Likewise, it is common practice that, when the court enters an order, all parties are served simultaneously. When this system breaks down—when one party initiates ex parte contact, when each party does not know precisely what the other parties know, when the court does not know whether all parties have been informed about a particular matter—the court inevitably is inundated with additional ex parte communications, generally from one of the opposing parties. And, somewhere along the line, ethical problems are bound to arise—just as surely as if one of the parties were to walk into chambers with a personal request, or if the court were to call up one of the parties to ask

---

1. The court wishes to note that this ex parte application is not, professionally or ethically, any more culpable than the legion of ex parte applications made every week. It is not the court's intention to single out the parties or attorneys in this case. Nor, it should be said, does the procedural impropriety of this application bear in any way on the court's view of the merits of the claims made in the application or on the underlying claims in the suit.

The court also notes that, unlike many of the ex parte applications it sees, plaintiff in this case has at least made an effort to comply with C.D.Cal. Local R. 7.18 and 7.18.1 (dealing with the procedure for ex parte applications). The point is that mere technical compliance with the filing requirements of the Local Rules is not enough to justify an ex parte application.

about its theory of the case.[2]

Third, ex parte applications contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court. Both contemplate that *noticed* motions should be the rule and not the exception.[3] Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason. They demand priority consideration, where such consideration is seldom deserved. In effect, they put the applicant "ahead of the pack," without cause or justification. Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to "cut in line" ahead of those litigants awaiting determination of their properly noticed and timely filed motions.[4]

Nor are these evils limited to "pure" ex parte communications. A "hybrid" form of ex parte communication has developed in recent years which is even more pervasive than the pure form, and equally troubling. This hybrid is in the nature of a request for action by the court; it is made outside the framework of the Local Rules; and it is captioned, "Ex parte Application." Though the hybrid form of ex parte communication includes no notice of hearing, it usually is served on the other side. Opposing parties are thus generally afforded an opportunity to file opposing papers. Nevertheless, this hybrid suffers from virtually all of the same defects as the pure form of ex parte contact: the same practical problems arise; the same ethical considerations are implicated. Therefore, the hybrid form of ex parte communication is to be discouraged, just as much as the pure form.

■ Given the value our system places on the adversarial process, it is not surprising that the opportunities for legitimate ex parte applications are extremely limited. Essentially, these opportunities are the following: First, where there is some genuine urgency such that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." *See* Fed.R.Civ.P. 65(b) (temporary restraining order). Second, ex parte proceedings are appropriate where there is a danger that notice to an opposing party will result in that party's flight, destruction of evidence, *see, e.g., Franks v. Delaware,* 438 U.S. 154, 169, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("The pre-search proceeding is necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence."), or secretion of assets, *see, e.g.,* Cal.Code Civ.Proc. § 485.010 et seq. (ex parte hearing procedure for obtaining writ of attachment).[5] Third, what I have termed "hybrid ex parte applications" (*i.e.,* where the other side actually is served) may be necessary when a party

---

**2.** By the same token, the incidence of telephone calls to chambers, seeking substantive advice from law clerks, is markedly increasing. Such calls are in effect ex parte communications with the judge and suffer the same vice as any ex parte contact.

**3.** *Cf. Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70,* 415 U.S. 423, 438–39, 94 S.Ct. 1113, 1123–24, 39 L.Ed.2d 435 (1974) ("The stringent restrictions imposed by ... Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.").

**4.** *Cf. Omaha Indemnity Co. v. Superior Court,* 209 Cal.App.3d 1266, 258 Cal.Rptr. 66 (1989) (discussing pervasive use of extraordinary writs of appeal).

**5.** Some statutorily authorized ex parte proceedings may also implicate various of these concerns. *See, e.g.,* 15 U.S.C. §§ 1116(d)(4)(B)(vii) (The court shall not grant an ex parte application for the seizure of trademark-infringing goods unless "the person against whom seizure would be ordered ... would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.").

seeks a routine order (*e.g.*, to file an over-long brief or to shorten the time within which a motion may be brought). Even so, the application ought properly to be addressed to the *need* to exceed the page limit or for shortened time, rather than to the substance of the motion itself.

■ As in hundreds of other cases where requests for continuances, leave to amend, reconsideration of prior rulings, attorneys' fees, severance, and for compelling discovery are now made routinely on an ex parte basis instead of by noticed motion, the ex parte application for sanctions in this case is based on neither any real urgency nor on the danger that defendant will flee, destroy evidence, or secrete assets. There is thus no reason why plaintiff's application for sanctions should be heard ex parte. Whatever the circumstances that allegedly give rise to a request for sanctions, they are not likely to change in the time necessary to notice a motion. Nor is defendant likely to have the opportunity to destroy evidence that relates to the charges made. As much as any issue that the court faces, it is imperative that, when one party seeks sanctions against another, the second party have an opportunity to answer the charges made and to develop a careful and complete record.[6]

Accordingly, plaintiff's ex parte application for sanctions is denied as being procedurally improper, without prejudice to its being brought properly as a noticed motion.

6. In fairness to plaintiff, it should be noted that, by styling his ex parte application as one for order to show cause "on 21 days notice," plaintiff had no real desire to deprive defendant of the opportunity to respond. Plaintiff also makes this point in his reply brief on the ex parte application. The vice is the procedure itself, not plaintiff's motivation in this particular case.