### MISSION POWER ENGINEERING COMPANY, etc., Plaintiff,

v.

### CONTINENTAL CASUALTY COMPANY, etc., et al., Defendants.

### No. SACV 94–637–LHM (EEx).

United States District Court,
C.D. California,
Southern Division.

March 14, 1995.

---

Munger Tolles & Olson, Los Angeles, CA, for plaintiff.

Rubin, Eagan & Feder, Beverly Hills, CA, for defendants.

## MEMORANDUM OF DECISION AND ORDER

EDWARDS, United States Magistrate Judge.

"Ex parte applications have reached epidemic proportions in the Central District." Judge Rymer warned us of this in 1989 in *In re Intermagnetics America, Inc.*, 101 B.R. 191 (C.D.Cal.1989). Since then the abusive use of ex parte motions has worsened. This abuse is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court.

Before the court now is plaintiff's ex parte application for an order shortening time to hear plaintiff's motion to compel the return of some papers, allegedly papers that were privileged and that were inadvertently given to defendant in response to a request for production of documents. This is the seventh ex parte motion filed in this case in just the last two months. Ex parte motions have almost become the normal manner of communicating with the court in this case. In fact, defendant's opposition to the motion is not styled as an opposition but as another ex parte motion, namely, as an ex parte applica-

tion for an order striking plaintiff's motion. Presumably, plaintiff's reply will be yet another ex parte motion, this time to strike defendant's ex parte response.

Ex parte motions are rarely justified, and it is necessary to explain again when their use is justified and when it is not. Lawyers also need to understand why the use of ex parte motions can be detrimental even to the party filing them. To understand the issues requires answers to three questions: What is an ex parte motion; what problems does its use create; and what does a proper ex parte motion consist of?

## What is an ex parte motion?

The expression "ex parte motion" is a term of art. In its pure form it means a request a party makes to the court without any notice to the other side. These are made relatively infrequently by lawyers, but nonlawyers representing themselves are flooding the courts with them. Nonlawyers seeking advantage over their adversaries write personal letters to the judge, telephone the clerk or other staff members, or even stand outside the judge's chambers to try to slip in their private pejoratives about the lack of virtue of the opposition.

Lawyers at least are generally careful to limit their pure ex parte communications to those circumstances where such communications may be justified, namely, where notice to the adversary might nullify the ability ever to achieve the end sought. This could occur, for example, where there is a temporal urgency such that immediate and irreparable harm will occur if there is any delay in obtaining relief. ("The tomatoes will spoil if we don't move them immediately.") It could also occur where it is likely that, if given notice, someone would act improperly to frustrate the party's ability ever to obtain the relief sought. ("If we alert them, they will move the yacht before we can seize it.")

Regrettably, however, lawyers are the principal abusers of what Judge Rymer referred to as a "hybrid" form of ex parte communication: a request for action by the court made outside the framework of the rules. These are usually captioned, "Ex parte Application," "Ex parte Motion," or "Ex parte Request." They contain no notice of hearing, though they often ask the court to hold a hearing urgently. They purport to have been served on the other side, and, under the local rules of this district, they contain a declaration of counsel stating that he or she notified the opposing party, usually by telephone, and that the opposing party does or does not oppose the motion. The court either permits the opposing party to file opposing papers, or it calendars oral argument that is heard urgently, often by telephone conference call.

## What problems do ex parte motions create?

The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

These hybrid ex parte motions also bring out the worst instincts of the lawyers. The moving party's lawyer perceives it to be the unethical conduct of the opposing counsel that made it necessary to file its motion in the first place. In plaintiff's moving papers, it is alleged that:

> It is little wonder why attorneys are regarded with such disdain by the public at large given the duplicitous conduct of [defendant's] counsel and others of like ilk.... Argument in the alternative is one thing, but agreements and declarations in the alternative is nothing more than janus-faced mercenaries with no regard for one's role as an officer of the Court.

The opposing lawyer who has to abandon his other clients to deal urgently with the motion perceives the episode as just another indicator of the maleficence of the adversary. In this case, the opposing party did hastily put together a response and have it filed and messengered to chambers. The hostility exhibited in the opposition is not subtle:

> [Plaintiff's] conduct is incredible. [Plaintiff] first notified [defendant] of its intention to file its discovery motion *one day* prior to filing the motion.... When [defendant's] counsel could not meet on only ten minutes' notice, [plaintiff's] counsel decided to go ahead and file its procedurally defective motion without meeting. [Plaintiff's] ambush tactics and utter disregard for [the local rules] is scandalous.

All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side. The opposing party can rarely make its best presentation on such short notice. Its lawyers can sometimes be made to appear inept. Anything that tends to give unfair advantage to one side may, however, cause the court to compensate by giving the benefit of the doubt to the other side. This may result, ironically, in the moving party actually suffering an undeserved disadvantage due to the perception that it acted unfairly.

All derogatory allegations about an opponent in motion papers raise ethical problems for the lawyers and the court to the extent that the allegations are subjective or conclusory. When unsupportable allegations are made in regular noticed motions, they can to a great extent be neutralized by a well-prepared rebuttal. In papers prepared on short notice, however, the lawyers too often simply make allegations that have no supporting evidence to back them up. Even more pernicious is another tendency: the advocates draw conclusions that appear to be supported by voluminous exhibits, but are not borne out when the evidence is reviewed with more deliberation and more careful rebuttal than is possible in hasty hearings on ex parte motions. This poisoning of the well may or may not be deliberate, but it can taint the court's view of a lawyer, a party, or both.

A judge will rarely be willing to draw the conclusion that one member of the bar of this court is worthy of belief and another is not when there is little extrinsic evidence of their veracity. Drawing such a conclusion would truly jar the fundamental assumptions that the adversary system is based on and erode the neutrality that judges are sworn to maintain. Lawyers should thus be aware of the risks of making unsupported statements, drawing unjustifiable conclusions, or even using words with high emotional connotations about an adversary. Such conduct says more about the lawyer making the statements than about the adversary. Consequently, the tainting of the court's view is more likely to be detrimental to the accuser than to the accused.

Finally, lawyers need to be aware of how sensitive the courts are to the unfairness that results from the flood of unwarranted ex parte motions. Safeguards that have evolved over many decades are built into the Federal Rules of Civil Procedure and the Local Rules of this court. The rules contemplate that regular noticed motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable. As Judge Rymer noted:

> Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.

*In re Intermagnetics America, Inc., supra,* 101 B.R. at 193.

When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge. The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes

are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.

It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.

### What does a proper ex parte motion consist of?

Improperly prepared ex parte motions exacerbate the problems created by their abusive use. There may be situations that warrant ex parte relief that go unrecognized because of defects in the papers. The converse is also true: lawyers will be able to recognize when ex parte relief is not justified, if they carefully analyze what is needed for a proper motion. Many ex parte motions are denied, not because the underlying request is unwarranted, but because the papers do not show that bypassing the regular noticed motion procedure is necessary.

■ An ex parte motion should never be submitted by itself. It must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking. Properly designed ex parte motion papers thus contain two distinct motions or parts. The first part should address only why the regular noticed motion procedures must be bypassed. The second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a "proposed" motion and they show no hearing date.) *These are separate, distinct elements for presenting*

*an ex parte motion and should never be combined. The parts should be separated physically and submitted as separate documents.*[1] The clerk's office will stamp the ex parte motion as "filed" and the proposed motion as "lodged."

The purpose of the first part of the ex parte motion papers is to establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words, it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment. The reasons stated must be supported by deposition transcripts or by affidavits or declarations whose contents would be admissible if the deponents, affiants, or declarants were testifying in court. A statement "on information and belief" by the lawyer preparing the papers is insufficient.

■ What showing is necessary to justify ex parte relief? First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

■ To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial. A sliding scale is used to measure the threat of prejudice. If the threatened prejudice would not be severe, then it must be apparent that the underlying motion has a high likelihood of success on the merits. If drastic harm is threatened, then it is sufficient to show that there are close issues that justify the court's review before the party suffers the harm.[2]

---

1. The local rules of this district also require that a third paper, a physically separate proposed order, be lodged with the ex parte motion. Local Rule 7.18.

2. *Cf. United States v. Nutri–Cology, Inc.*, 982 F.2d 394, 397 (9th Cir.1992) [To obtain a preliminary injunction, "the moving party must show either

(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor."]; *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985) ["These two formulations represent two points on a sliding scale in which the required degree of irreparable harm

■ To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation. For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period. As Judge Rymer warned, "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have...." *In re Intermagnetics America, Inc., supra,* 101 B.R. at 193.

■ The present motion to shorten time to hear plaintiff's motion for return of papers inadvertently delivered to defendant does not establish that plaintiff will be irreparably prejudiced if its motion is heard on the regular motion calendar. Nor does plaintiff establish that it was without fault in creating whatever it is that it perceives as a crisis condition. Accordingly, the ex parte motion to shorten time for hearing is denied.

The clerk is instructed to place plaintiff's motion on the next regular motion calendar and give notice to all parties of the time for hearing same. Each party may serve and file supplemental briefs not exceeding ten pages not later than four court days before the hearing.[3]

increases as the probability of success decreases."]

3. Nothing in this order is intended to express any opinion of the merits of plaintiff's motion.