Rex K. DeGEORGE, Petitioner,

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, Respondent,

No. 99–71446.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2000

Filed July 18, 2000

8. Solis did not request an instruction on involuntary manslaughter at trial.

Richard Marmaro, McCambridge, Deixler & Marmaro, LLP, Los Angeles, California, for the petitioner.

David C. Marcus and Eileen M. Decker, Assistant United States Attorneys, Criminal Division, Los Angeles, California, for the real party in interest.

Before: WALLACE, PREGERSON, and THOMAS, Circuit Judges.

WALLACE, Circuit Judge:

Rex K. DeGeorge petitions this court for a writ of mandamus commanding the United States District Court for the Central District of California to (1) vacate its order denying DeGeorge's motion to dismiss certain counts for which he has been indicted as time barred, and (2) enter an order dismissing those counts. We have jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651. Because DeGeorge's case does not meet the strict prerequisites for extraordinary relief, we deny his petition.

I

In January 1999, a federal grand jury returned a fourteen-count indictment charging DeGeorge with various federal crimes related to his participation in an alleged insurance fraud scheme. In late 1992 and early 1993, DeGeorge and a partner purportedly purchased a 76–foot motor yacht in Italy, artificially inflated its value through sham sales and purchases, insured it at the inflated value, and attempted to collect insurance proceeds after scuttling it on its maiden voyage from Italy. In April 1993, the insurer filed a declaratory relief action in the Central District Court of California seeking to rescind the policy and avoid payment. After extensive discovery, the district court alerted the United States Attorney about a possible perjury investigation. Eventually, the district court rescinded the policy and entered judgment for the insurer. *Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 1997 WL 382108 (C.D.Cal. Feb.20, 1997), *aff'd*, 159 F.3d 412 (9th Cir.1998), *cert. denied*, — U.S. ——, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999).

An Assistant United States Attorney investigated the perjury claim for a brief time before resigning. The matter was reassigned in April 1997 to another Assistant United States Attorney, who investigated the perjury claim as well as the alleged conduct surrounding the yacht's sinking. On August 18, 1997, as part of his investigation, the Assistant United States Attorney made a formal request to the Italian government for relevant documentary evidence and for assistance in obtaining interviews with eight witnesses in Italy who allegedly had first-hand information. A grand jury subpoena was issued on August 25, 1997, to one of the insurer's attorneys, ordering all documents from the civil case to be provided to the government by October 7, 1997. Most critical to DeGeorge's petition for a writ of mandamus, on August 26, 1997, the Assistant United States Attorney filed an ex parte, in camera application, pursuant to 18 U.S.C. § 3292, for an order suspending the running of the statute of limitations for any federal offenses related to DeGeorge's alleged conduct pending the government's foreign evidence request. A district court judge granted the section 3292 request on September 3, 1997, suspending the statute of limitations period as of August 18, 1997, the date of the foreign evidence request.

After DeGeorge was indicted, his case was assigned to a different district court judge than the one who made the section 3292 order. DeGeorge filed a motion to dismiss, arguing that the section 3292 order was invalid, that counts one through twelve of the indictment were time barred or otherwise defective, and that they should therefore be dismissed. The district court denied the motion. It is the district court's denial of DeGeorge's motion to dismiss that he challenges in this petition for a writ of mandamus.

## II

A writ of mandamus is "an extraordinary or drastic remedy," *Calderon v. United States Dist. Court,* 163 F.3d 530,

534 (9th Cir.1998) (en banc) (internal quotation omitted), used "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (internal quotation omitted). The petitioner has the burden to establish "that its right to issuance of the writ is clear and indisputable." *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (internal quotation omitted). We typically examine five factors, first enumerated in *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir.1977), to evaluate whether a petitioner carries its burden:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Id.* at 654–55 (citations omitted). The *Bauman* factors are "guidelines," *id.* at 655, to be "weighed together, as is appropriate, based on the facts of the individual case." *Calderon,* 163 F.3d at 534. Usually, "the absence of factor three—clear error as a matter of law—will always defeat a petition for mandamus. . . . [F]actors one and two usually travel together, while factors four and five seldom do." *Id.* (citations omitted).

### A.

We first examine whether DeGeorge has any other adequate means, such as direct appeal, to attain the relief he seeks, which is the dismissal of counts one through twelve of his indictment as time barred. We are guided in this issue

by *United States v. Rossman,* 940 F.2d 535, 536 (9th Cir.1991) (per curiam), which held that the denial of a motion to dismiss an indictment as time barred was not a final order appealable pursuant to 28 U.S.C. § 1291, or an interlocutory order appropriate for immediate review pursuant to *Abney v. United States,* 431 U.S. 651, 656–58, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). It is implicit in *Rossman,* and the decisions of the Third and Sixth Circuits upon which it relies, that the denial of a motion to dismiss an indictment as time barred may be reviewed on direct appeal after trial. *See Rossman,* 940 F.2d at 536, *citing United States v. Davis,* 873 F.2d 900, 908–09 (6th Cir.1989), and *United States v. Levine,* 658 F.2d 113, 126 (3d Cir.1981). Since direct appeal is available to DeGeorge for obtaining the relief he seeks, this factor weighs against granting mandamus.

DeGeorge, citing *Credit Suisse v. United States District Court,* 130 F.3d 1342, 1345–46 (9th Cir.1997), argues that since the denial of his motion to dismiss is not *immediately appealable,* he is entitled to mandamus relief. In that case, we issued a writ of mandamus compelling the district court to vacate its denial of a motion to dismiss and also to dismiss the action. In so doing, we did state that "immediate review of the denial of the[ ] motion to dismiss" was not available. *Id.* at 1346. However, a careful reading of *Credit Suisse* confirms that we granted the writ only after consideration of other relevant *Bauman* factors that weighed heavily in favor of granting the writ—specifically, "severe prejudice that could not be remedied on direct appeal," *id.,* and a clear error of law. *Id.* at 1346–48. A careful reading of *Credit Suisse* demonstrates that it does not stand for the proposition that the first *Bauman* factor is always satisfied when a motion to dismiss is denied because that order is not immediately appealable. The *Credit Suisse* analysis of the first *Bauman* test is the exception, not the rule, because direct appeal after trial, as opposed to immediate review, is the typically adequate

means of review. *Bauman,* 557. F.2d at 654, 656. If writs of mandamus could be obtained merely because an order was not immediately appealable, as DeGeorge argues, mandamus would eviscerate the statutory scheme established by Congress to "strictly circumscrib[e] piecemeal appeal," *Bankers Life,* 346 U.S. at 383, 74 S.Ct. 145, *citing* 28 U.S.C. §§ 1291, 1292, and mandamus would "become a substitute for the normal appellate process." *Calderon,* 163 F.3d at 534, *citing Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), and *Bankers Life,* 346 U.S. at 383, 74 S.Ct. 145. We therefore disagree with DeGeorge's argument, and hold that direct appeal is an adequate means for him to obtain the relief he seeks. Thus, the first *Bauman* factor weighs against DeGeorge.

## B.

▮ We next address whether DeGeorge will suffer damage or prejudice that cannot be corrected on direct appeal. This factor is closely related to the preceding one. *Bauman,* 557 F.2d at 654. A mandamus petitioner "must demonstrate some burden ... other than the mere cost and delay that are the regrettable, yet normal, features of our imperfect legal system." *Calderon,* 163 F.3d at 535. Prejudicial harm serious enough to require mandamus relief includes situations in which one's "claim will obviously be moot by the time an appeal is possible," or in which one "will not have the ability to appeal." *Id.*

DeGeorge's prejudice argument involves his detention pending trial, without bail, because the district court found him to be "a substantial flight risk." DeGeorge argues, without citing any supporting legal authority, that the district court's denial of his motion to dismiss prejudices him because (1) his detention aggravates health problems and inhibits his relationship with his wife and newborn child, and (2) he will incur substantial legal expenses and delay from trial and appeal.

This is not the type of prejudice that is relevant in determining mandamus relief. Being forced to stand trial despite the running of the statute of limitations on certain charges is not inherently prejudicial: "'The limitations statute ... creates a safeguard against unfair *convictions* arising from delinquent prosecutions but does not entail a right to be free from trial ....'" *Rossman*, 940 F.2d at 536 (emphasis added), *quoting Levine*, 658 F.2d at 126. Further, "unnecessary cost and delay" resulting from "an erroneous ruling of the district court," *Calderon*, 163 F.3d at 534, are not prejudice correctable through use of the writ of mandamus. *Id.* at 534–35 (citations omitted); *see also Bankers Life*, 346 U.S. at 383, 74 S.Ct. 145. While we are sympathetic to the hardships that DeGeorge's detention pending trial poses to his personal and family life, these hardships are not the type that we weigh in determining whether mandamus relief should be granted. *Cf. Calderon*, 163 F.3d at 535 (describing prejudicial situations as ones actually limiting petitioner's ability to bring direct appeal later). Thus, the second *Bauman* factor weighs against DeGeorge.

### C.

We next consider whether the district court's denial of DeGeorge's motion to dismiss was clearly erroneous. The absence of clear error is usually fatal to a petition for writ of mandamus. *Id.* at 534. In a case like this one involving statutory interpretation, the clearly erroneous standard is met only if we have a definite and firm conviction that the district court's interpretation of the statute was incorrect. *See In re Cement Antitrust Litig.*, 688 F.2d 1297, 1306 (9th Cir.1982). If, on the other hand, the question is a close one, and we are "not firmly convinced, either way, as to what the correct result should be," we cannot hold the district court's interpretation to be clearly erroneous, and thus we cannot issue the writ, even though the district court's interpretation might be overruled later on direct appeal. *See id., citing Bauman*, 557 F.2d at 660.

The district court denied DeGeorge's motion to dismiss, holding that his charges were not time barred because the previous order suspending the statute of limitations on his charges complied with 18 U.S.C. § 3292. It is undisputed that, but for the section 3292 suspension order, counts one through twelve of DeGeorge's indictment would be time barred. There is a five year limit on the charges, 18 U.S.C. § 3282; the factual events surrounding those charges occurred in late 1992 and early 1993; and the indictment was returned in January 1999. DeGeorge challenges the district court's interpretation of section 3292, arguing that the statute: (1) disallows ex parte, in camera applications; (2) requires that the foreign evidence sought be documentary, unobtainable in the United States, and essential to bringing charges against the target of the investigation; and (3) mandates that a grand jury actually be impaneled and hearing evidence on the target's offenses before the statute of limitations is suspended.

Before analyzing each of these arguments, we first review the basic principles of statutory construction:

The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute. The first step in ascertaining congressional intent is to look to the plain language of the statute. To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme. If the statute uses a term which it does not define, the court gives that term its ordinary meaning.

The plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results. If the statute is ambiguous—and only then—courts may look to its legislative history for evidence of congressional intent.

*United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999) (citations omitted). We thus start with the language of the statute itself.

Section 3292 states:

Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1).

1.

■ DeGeorge first argues that the government's section 3292 application was invalid because it was ex parte and in camera. However, there is no basis in the statute for such an argument. Section 3292(a)(1) refers to the government making an "application," not a "noticed application." 18 U.S.C. § 3292(a)(1). Nowhere in the section does it state that the party whose statute of limitation is being suspended is entitled to notice or a hearing.

■ DeGeorge argues that because section 3292(a)(1) refers to the court making certain findings "by a preponderance of the evidence," he was entitled to appear at a section 3292 hearing and present evidence. However, to follow that interpretation would be to ignore the traditionally non-adversarial and secret nature of grand jury investigations. *See, e.g., United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Rather, we read the phrase "if the court finds by a preponderance of the evidence" in section 3292(a)(1) to mean that the government has some burden to establish, as opposed to being able merely to assert

without support, that the foreign evidence it seeks meets the section's requirements.

DeGeorge cites one district court opinion denying a section 3292 application because it was ex parte. *In re Grand Jury Investigation,* 3 F.Supp.2d 82 (D.Mass. 1998). However, this opinion is not precedential and, as the district court stated, another district court has implicitly allowed an ex parte application. *Id.* at 83, *citing United States v. Neill,* 940 F.Supp. 332, 335 (D.D.C.1996), *vacated on other grounds,* 952 F.Supp. 831, 831 (D.D.C. 1996). Finally, DeGeorge cites *United States v. Ordonez,* 722 F.2d 530, 540 (9th Cir.1983), and *In re Intermagnetics America, Inc.,* 101 B.R. 191, 192–93 (C.D.Cal. 1989), which discuss the hazards of ex parte and in camera proceedings. However, neither of these cases is on point as they do not involve grand jury proceedings which, as *Calandra* makes clear, 414 U.S. at 343–44, 94 S.Ct. 613, are unique proceedings in the criminal justice system. Thus, there is no clear error in this aspect of the district court's order.

2.

■ DeGeorge next argues that the word "evidence" in section 3292(a)(1) means admissible, documentary evidence that is unobtainable in the United States and that is essential to bringing charges against the target of the investigation. He argues that the government improperly used the section 3292 application as a dilatory tactic because much of the evidence it sought was obtainable in the United States from the discovery taken in the civil declaratory judgment case. However, DeGeorge's interpretation of "evidence" in section 3292(a)(1) is entirely without textual support in the statute or in the reality of grand jury investigations.

Section 3292(a)(1) does not define "evidence"; thus, we interpret it according to "its ordinary meaning." *Daas,* 198 F.3d at 1174. The ordinary definition of evidence is broad: "Something (including testimony, documents and tangible objects) that tends

to prove or disprove the existence of an alleged fact." *Black's Law Dictionary* 576 (7th ed.1999). "Evidence" in the context of a grand jury investigation is especially broad, encompassing many types of evidence inadmissible at trial:

> The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.

*Calandra*, 414 U.S. at 343, 94 S.Ct. 613 (internal quotation omitted). Congress easily could have limited the type of evidence the government could seek pursuant to section 3292 in the manner DeGeorge suggests above, but it did not. The only limits Congress imposed on the type of evidence sought pursuant to a section 3292 application were that the evidence be "of an offense" and that it "reasonably appear[ ] . . . that such evidence is . . . in [a] foreign country." 18 U.S.C. § 3292(a)(1).

DeGeorge also argues for limitations on section 3292 applications. DeGeorge argues that "evidence" means documentary evidence, citing legislative history that he argues shows Congress's intent to limiting section 3292 applications to situations in which the government is seeking foreign business records. However, because Congress used the unlimited word "evidence" in section 3292(a)(1), not "foreign records," this aspect of the statute is plain, and we disregard DeGeorge's legislative history argument. *Ratzlaf v. United States,* 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Daas,* 198 F.3d at 1174

(same). DeGeorge also argues that, unlike this case, every other decided section 3292 case involves requests for documentary evidence alone; however, that is incorrect. *See United States v. Meador,* 138 F.3d 986, 989 (5th Cir.1998) (indicating government sought interviews in addition to documents). In any event, it is clear from the record that the government's section 3292 application indicated that it sought documentary evidence, as well as testimonial evidence, in its request to Italian authorities.

DeGeorge next argues that "evidence" in section 3292(a)(1) means evidence that would be admissible at trial. He cites *United States v. Bischel,* 61 F.3d 1429, 1433 (9th Cir.1995), contending that our statement " 'Evidence of an offense' is essentially worthless unless admissible" is the holding of the case. That is not the holding in *Bischel;* that case addressed the interpretation of the phrase "final action" in section 3292. *Id.* at 1434 ("We therefore conclude that 'final action' for purposes of § 3292 means . . . ."). The statement upon which DeGeorge relies is thus not a holding but dicta and does not necessarily apply in other contexts. The district court was not clearly erroneous in rejecting the theory that section 3292 may only be used when the government seeks foreign evidence that is admissible at trial.

DeGeorge asserts that any evidence the government seeks must be essential to bringing charges against the target of the government's investigation. The only support he offers for this interpretation is legislative history, which we disregard because, as we stated earlier, of the plain language of the statute. The statute clearly states that the government need only establish that "evidence of an offense," not evidence essential to bringing charges on an offense, is "in [a] foreign country." 18 U.S.C. § 3292(a)(1). DeGeorge's proposed interpretation of the statute would require district courts to make a determination of the value of the foreign evidence the government seeks—to second-guess the gov-

ernment's investigation—which the statute simply does not contemplate.

Finally, DeGeorge argues that the foreign evidence the government seeks to qualify for a section 3292 suspension must be unavailable in the United States. He argues that all the evidence the government used in its eventual grand jury proceeding against him was available in the discovery records from the civil trial, filed in the same building in which the United States Attorney's office is located, making the section 3292 suspension request an abusive stalling tactic to allow the government more time to investigate DeGeorge's alleged crimes. The record indicates, however, that the government did seek evidence that was unavailable in the United States. For example, while transcripts of the depositions of two persons the government sought to question in Italy were available in the United States as part of the record in the civil suit, there were six other individuals the government sought to question who had not been previously deposed.

The district court's interpretation of "evidence" for purposes of section 3292(a)(1) was not clearly erroneous.

### 3.

■■■ DeGeorge finally argues that section 3292(a)(1) requires that a specific grand jury be investigating the defendant's underlying offenses before the district court may suspend one's statute of limitations. It is factually undisputed that the Assistant United States Attorney investigating DeGeorge's alleged offenses had not presented evidence regarding those offenses before one of the several grand juries impaneled at the time in the Central District of California before making the section 3292 application, but that one day before making the section 3292 application, he served a grand jury subpoena on one of the attorneys for the insurer in the civil trial for documentary evidence related to that trial.

In support of his argument, DeGeorge points to the following language in section 3292(a)(1): "Upon application of the United States ..., the district court *before which a grand jury is impaneled to investigate the offense* shall suspend the running of the statute of limitations for the offense...." 18 U.S.C. § 3292(a)(1) (emphasis added). The district court rejected DeGeorge's argument, stating that there is nothing "in the statute or the legislative history, for that matter, that requires that a grand jury be impaneled and investigating the offense at the time that a [section] 3292 request is made." The district court stated that it was sufficient that grand juries were impaneled in the Central District of California at the time, and that a grand jury subpoena had been issued before the section 3292 request was made.

No case has been cited to us, nor have we found one, deciding this issue. It appears that this is an issue of first impression for the federal courts. There is scant case law interpreting section 3292, and the opinions that exist interpret other aspects of that section. *See, e.g., Meador,* 138 F.3d at 992 (interpreting "final action"); *Bischel,* 61 F.3d at 1434 (same); *United States v. Miller,* 830 F.2d 1073, 1076 (9th Cir.1987) (holding section 3292 applies when suspension request made after government already obtained foreign evidence). One case, *United States v. Neill,* 952 F.Supp. 831, 833 (D.D.C.1996), *vacating* 940 F.Supp. 332 (D.D.C.1996), states: "The government can only request that statutes of limitation be tolled for offenses under investigation by the grand jury...." However, it is clear that this statement was neither *Neill*'s central holding nor essential to its disposition, and is thus dicta.

■■■ The use of the phrase "the district court before which a grand jury is impaneled to investigate the offense" in section 3292(a)(1) is ambiguous. A statute is ambiguous if it "gives rise to more than one reasonable interpretation." *A–Z Int'l v. Phillips,* 179 F.3d 1187, 1192 (9th Cir.

1999). The phrase could be read merely as a venue-type provision, indicating Congress's intent was only to limit which court could issue the order suspending the statute of limitations. This is the district court's interpretation of the statute, and it is entirely plausible. On the other hand, section 3292(a)(1) might be held to require implicitly that before an application is brought to suspend the statute of limitations for the offense, a grand jury already be impaneled to investigate an offense. This is also a reasonable interpretation, because the phrase "a grand jury is impaneled to investigate the offense" is phrased in the active and present voice, suggesting an implicit requirement.

This ambiguous phrase is not clarified by looking "to the entire statutory scheme" surrounding statutes of limitations and grand juries. *Daas,* 198 F.3d at 1174. The United States Code sections concerning statutes of limitations, 18 U.S.C. §§ 3281–95, and grand juries, 18 U.S.C. §§ 3321–22, Fed.R.Crim.P. 6, do not contain language similar to the phrase "the district court before which a grand jury is impaneled to investigate the offense" in section 3292(a)(1).

In light of this ambiguity, we turn to the legislative history. *Daas,* 198 F.3d at 1174. Only House Report No. 98–907 discusses section 3292(a)(1). The report states in part:

> Subsection (a)(1) of new section 3292 authorizes a Federal court, upon application of a Federal prosecutor that is made before the return of an indictment and that indicates that evidence of an offense is located in a foreign country, to suspend the running of the applicable statute of limitation. If the court finds by a preponderance of the evidence that (1) an official request has been made for the evidence and (2) it appears (or reasonably appeared at the time the official request was made) that the evidence is (or was) in that country, the court must order such suspension.

H. Rep. No. 98–907, at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3578, 3584. At the very least, this scant legislative history does not contradict the district court's interpretation.

The district court faced a difficult statutory interpretation question. Because this was a question of first impression regarding an ambiguous statute, and because the limited legislative history did not compel an interpretation different than the district court's, we cannot hold that the district court clearly erred. The third *Bauman* factor therefore weighs against DeGeorge.

### D.

We finally consider the last *Bauman* factors, which are usually alternative—if one is present, the other probably will not be. *Calderon,* 163 F.3d at 534. DeGeorge only argues that his case raises new and important problems or issues of law of first impression; he does not argue that the court's order perpetuates an oft-repeated error or manifests a persistent disregard of the federal rules.

We have already stated that DeGeorge's petition raises issues of first impression. They do not, however, appear to be particularly important or pressing to the courts as a whole, because no court in the fifteen years since section 3292(a)(1) became effective has been forced to address them. Even if they were important issues, we would not issue a writ of mandamus in this case because the district court's decision was not clearly erroneous. *See id.* (stating absence of clear error usually fatal to petition for writ of mandamus). Having failed to show that he has a "clear and indisputable" right to the writ, DeGeorge's petition fails. *Bankers Life,* 346 U.S. at 384, 74 S.Ct. 145.

### III

DeGeorge also petitions, on a separate ground, for a writ of mandamus concerning the district court's denial of his motion to dismiss count three of the indictment,

alleging mail fraud in violation of 18 U.S.C. § 1341. DeGeorge argues that the district court should have granted his motion to dismiss because the document the indictment avers he mailed was sent after the alleged insurance scheme was complete.

Even without examining whether the district court's decision was clearly erroneous as a matter of law, it is clear that the other *Bauman* factors weigh heavily against DeGeorge: he can raise this issue on direct appeal, he is not prejudiced by having to defend himself on count three, and the district court's decision does not involve an oft repeated error or an important issue of first impression.

Because DeGeorge has not carried his burden to establish "that [his] right to issuance of the writ is clear and indisputable," *id.,* we deny it.

PETITION DENIED.