**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard TITTERINGTON,**
**et al., Defendants.**

**Criminal No. 02–20165.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 3, 2005.

Robert W. Ritchie, Wade V. Davies, Stephen Ross Johnson, Ritchie Fels & Dillard, P.C., Knoxville, TN, Richard M. Carter, Esq., Martin Tate Morrow & Marston, Glen G. Reid, Jr., Esq., Wyatt Tarrant & Combs, Kemper B. Durand, Esq., Thomason Hendrix Harvey Johnson & Mitchell, William D. Massey, Esq., Lorna S. McClusky, Esq., Massey & McClusky, Memphis, TN, Michael R. Koblenz, Mound Cotton Wollan & Greengrass, Alan S. Futerfas, Esq., Law Office of Alan S. Futerfas, New York City, Richard M. Steingard, Law Office of Richard M. Steingard, Los Angeles, CA, for Defendants.

Richard Titterington, Denton, TX, pro se.

Geoffrey L. Feldman, New York City, pro se.

Sherrie–Lee Doreen Cave, Thousand Oaks, CA, pro se.

Robert Murray Bohn, Omaha, NE, pro se.

Stacy Layne Beavers, Denton, TX, pro se.

Michael Elliot Cole, Krum, TX, pro se.

Dan Newsom, Esq., Christopher E. Cotten, Esq., Memphis, TN, for Plaintiff.

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS THE IN-**

DICTMENT (dkt. # s 169 & 393); [1]
AND GRANTING DEFENDANTS'
REQUEST FOR A HEARING

DONALD, District Judge.

Before the Court are the motions of Richard Titterington,[2] Geoffrey L. Feldman, Stacy Layne Beavers, Robert Bohn, Sherrie Doreen Cave, Michael Elliot Cole, and Alvin Moss (collectively "Defendants") to dismiss the indictment against them pursuant to Fed.R.Crim.P. 12(b)(3)(B); Fed. R. Crim Proc. 48(b)(1) & (3); the Fifth Amendment to the United States Constitution; and 18 U.S.C. §§ 3282 & 3292. This Court previously ruled, in part, on Defendants' first motions to dismiss. Specifically, this Court and the United States Court of Appeals for the Sixth Circuit have considered the issue of whether the indictment must have charged facts supporting the tolling of the statute of limitations. Defendants, however, have asserted three additional bases allegedly warranting dismissal of the indictment. Defendants contend that 1) the government failed to comply with the requirements of § 3292 by applying ex parte for an order tolling the statute of limitations; 2) the government failed to otherwise comply with the requirements of § 3292; and 3) if § 3292 permits the government to apply ex parte for an order tolling the statute of limitations, then § 3292 is facially unconstitutional and unconstitutional as

applied.[3] For the following reasons, the Court DENIES Defendants' motions to dismiss the indictment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY [4]

In January 1996, the Federal Bureau of Investigations ("FBI") began investigating Defendants, other co-defendants, and their connections to an entity known as IDM for involvement in an international lottery operation. During this investigation, the FBI became aware that IDM was located in Bridgetown, Barbados, West Indies, and came to believe that important information pertaining to IDM's operations was located in Barbados. In furtherance of the investigation, the Office of International Affairs for the United States Department of Justice ("OIA") sent the Attorney General of Barbados a Letter of Request, on June 27, 1996, requesting "the issuance and execution of search warrants on IDM offices, storage facilities, the private residence of defendant Al Moss, and for bank records related to IDM." Barbados and FBI officials executed search warrants on July 12, 1996, seizing 140 bankers boxes of "documents significant to the evidentiary value of the on-going FBI investigation."

Subsequent to these searches, IDM representatives initiated court proceedings in Barbados challenging the legality of the

1. Although the only motion to dismiss currently listed as pending is docket entry 393, the Court references docket entry 169 because some of the issues raised in that motion to dismiss have yet to be considered by the Court and Defendants filed a supplement to that motion.

2. The Court notes that Defendant Titterington died on December 20, 2004. Accordingly, the motion to dismiss as to Defendant Titterington is moot.

3. The three additional bases asserted in favor of dismissal of the indictment were asserted

in the initial motion to dismiss, the second motion to dismiss, and/or the supplement to the motion to dismiss on the basis of the expiration of the statute of limitations.

4. The factual and procedural background is taken, in part, from this Court's earlier order, considering, inter alia, Defendants' initial motion to dismiss, docket entry 169. See Order Granting Defendants' Motions to Dismiss, Dkt. No. 247; Judgment of United States Court of Appeals for the Sixth Circuit, Dkt. No. 364.

searches. The Barbados court granted IDM's motion for an interim order requiring that the boxes be sealed and that they not be removed from Barbados pending a judicial hearing on the matter. On March 18, 1998, the Barbados court dismissed the interim order. IDM appealed and moved to enjoin law enforcement from unsealing or removing the seized documents. The Barbados court granted IDM's motion to enjoin law enforcement from unsealing the documents pending a resolution of the appeal.

On December 9, 1998, pursuant to 18 U.S.C. § 3292, the United States filed, in this Court, an ex parte motion to suspend the statute of limitations based on the difficulties it was encountering in obtaining the evidence located in Barbados. On December 14, 1998, this Court granted the government's motion. On May 8, 2002, the United States returned an indictment against Defendants.

▇▇ The indictment at issue charges each Defendant with violations of 18 U.S.C. § 1962(c) (substantive criminal RICO), 18 U.S.C. § 1962(d) (RICO conspiracy), and 18 U.S.C. § 1341 (mail fraud). Both the United States and Defendants agree that the five-year statute of limitations period set forth in 18 U.S.C. § 3282 applies to each of these offenses. All parties further agree that, absent tolling of the five-year statute of limitations period prior to the May 8, 2002 return of the indictment, the indictment does not allege the commission of any racketeering act, overt act in furtherance of the RICO conspiracy,[5] or mail fraud act during the May 9, 1997 to May 8, 2002 statute of limitations period by Defendants Titterington, Feldman, Beavers, Bohn, Doreen Cave, or Cole.[6]

---

5. The government contends that some of the predicate acts in the substantive RICO charge taken by co-Defendants Alvin Moss, Beverly Moss, Jeffrey Moss, and Larry Moss, which occurred within the five-year statute of limitations period, should apply when calculating compliance with the statute of limitations for the RICO conspiracy charge. In determining whether the statute of limitations has run, however, predicate acts in a substantive RICO count are defendant-specific. *United States v. Torres Lopez*, 851 F.2d 520 (1st Cir.1988); *United States v. Starrett*, 55 F.3d 1525, 1545 (11th Cir.1995). Therefore, the government may not rely on these predicate acts taken by the Moss family in determining whether the statute of limitations has been met with regard to the RICO charges against Defendants Titterington, Feldman, Beavers, Bohn, Doreen Cave, or Cole.

6. The last act of racketeering by Defendants Titterington, Feldman, and Beavers allegedly occurred on November 12, 1996. Indictment, Count One, Racketeering Act No. 41 ¶ 2. The last overt act in furtherance of the RICO conspiracy by Defendants Titterington, Feldman, and Beavers allegedly occurred on April 27, 1997. Indictment, Count Two, Overt Act No. 61 ¶ 2. Titterington's and Bea-

vers' last mail fraud acts allegedly occurred on July 1, 1996. Indictment, Count 52 ¶ 2. Feldman's last mail fraud act allegedly occurred on January 15, 1997. Indictment, Count 15 ¶ 2. Feldman is also charged with two violations of smuggling under 18 U.S.C. § 545. Feldman's last smuggling act allegedly occurred on July 4, 1996. Indictment, Count 2 ¶ 2.

Bohn's last act of racketeering allegedly occurred on May 7, 1997. Indictment, Racketeering Act No. 121 ¶ 2. Bohn's last overt act in furtherance of the RICO conspiracy allegedly occurred on April 27, 1997. Indictment, Count Two (RICO Conspiracy) ¶ 61. Bohn's last mail fraud act allegedly occurred on January 26, 1996. Indictment, Count 72 ¶ 2.

In the substantive RICO charge, Count 1, the most recent predicate act naming Doreen Cave is alleged to have occurred on May 7, 1997. *See* Count 1, Racketeering Act 121, Indictment at 125. The most recent act alleged in Count 2 of any defendants is April 27, 1996. *See* Indictment at Count 2 at 128, ¶ 3. The most recent predicate act relied upon in Counts 3 through 88 allegedly was committed on July 1, 1996, as set forth in Count 52. *See* Indictment at Count 52 at 187, ¶ 2.

## II. ANALYSIS

In support of their contention that the indictment should be dismissed, Defendants assert that 1) any tolling of the statute of limitations in the instant action was improper because the requirements of 18 U.S.C. § 3292 were not satisfied, and 2) if the requirements of 18 U.S.C. § 3292 were satisfied, then § 3292 is both unconstitutional on its face and unconstitutional as applied.

### A. Compliance with 18 U.S.C. § 3292

Defendants assert that the government did not properly apply to toll the statute of limitations as to the offenses alleged in the indictment pursuant to 18 U.S.C. § 3292. In support of this argument, Defendants assert that the government failed to comply with § 3292 because 1) ex parte application for tolling pursuant to § 3292 is improper, and 2) the government failed to provide the Court with anything of evidentiary value in its application to toll the statute of limitations, as required by § 3292.

To determine whether either of these arguments justifies dismissal of the indictment, the Court must first examine the language of 18 U.S.C. § 3292. In so doing, the Court must read the statute as a whole and construe it "to give each word operative effect." *United States v. Branson*, 21 F.3d 113, 115 (6th Cir.1994) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)); *see also United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir.1991) (stating that statute should not be construed in a manner that renders it meaningless). Moreover, the Court must interpret the statute to "avoid untenable distinctions and unreasonable results whenever possible." *Id.* (quoting *Ameri-can Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)).

The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute. The first step in ascertaining congressional intent is to look to the plain language of the statute. To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme. If the statute uses a term which it does not define, the court gives that term its ordinary meaning.

The plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results. If the statute is ambiguous—and only then—courts may look to its legislative history for evidence of congressional intent.

*DeGeorge v. United States District Court*, 219 F.3d 930, 936–37 (9th Cir.2000) (citing *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999)).

With these tenets of statutory construction in mind, the Court will now examine 18 U.S.C. § 3292, which provides:

(a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

(2) The court shall rule upon such application not later than thirty days after the filing of the application.

(b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

(c) The total of all periods of suspension under this section with respect to an offense—

(1) shall not exceed three years; and

(2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

(d) As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

18 U.S.C. § 3292. Thus, the explicit language of § 3292(a)(1) provides that a district court may, upon application by the government, toll the statute of limitations if the court finds by a preponderance of the evidence that the government has made an official request to a foreign country for evidence of an offense and that it reasonably appears, or appeared, that such evidence is, or was, in that foreign country at the time the request was made.

■ Defendants argue that, although a court may toll the statute of limitations pursuant to § 3292, it cannot do so upon the ex parte application of the government. In support of their position, Defendants assert that 1) nothing in the statute contemplates ex parte filing, as evidenced by the absence of the term "ex parte," 2) the phrase preponderance of the evidence indicates Congress' intent that a § 3292 application be adversarial in nature, and 3) nothing in the legislative history of § 3292 suggests that ex parte filing is appropriate. For the following reasons, the Court finds that none of these arguments is availing.

In *DeGeorge v. United States District Court*, 219 F.3d 930 (9th Cir.2000), the United States Court of Appeals for the Ninth Circuit considered an argument concerning ex parte application similar to the one Defendants have asserted. The *DeGeorge* Court determined that no basis exists in § 3292 for a finding that Congress intended to exclude applications made ex parte under the statute.[7] *DeGeorge*, 219 F.3d at 937. In so ruling, the court first noted that the language in § 3292(a)(1), provides simply "[u]pon application of the United States . . . ." *Id.* The *DeGeorge* Court reasoned, and this Court agrees, based on this language, that "[s]ection 3292(a)(1) refers to the government making an 'application,' not a 'noticed application.' Nowhere in the section does it state that the party whose statute of limitation (sic) is being suspended is entitled to notice or a hearing." *Id.* Thus, the language of § 3292 indicates that Congress

---

7. The Court would note that the Ninth Circuit is one of the few circuit courts which has considered an "ex parte" argument such as Defendants'. *See DeGeorge*, 219 F.3d at 937; *see also United States v. Torres*, 318 F.3d 1058, 1061 (11th Cir.), *cert. denied*, 540 U.S. 827, 124 S.Ct. 50, 157 L.Ed.2d 51 (2003) (stating "[u]nder § 3292, the government may apply, ex parte, for suspension of the statute of limitations when it seeks evidence located in a foreign country."). Although it appears that one district court has determined that § 3292 does not permit ex parte application, *see In re Grand Jury Investigation*, 3 F.Supp.2d 82 (D.Mass.1998), at least two district courts, other than this one, have granted a § 3292 application on an ex parte basis. *See United States v. Neill*, 952 F.Supp. 831 (D.D.C.1996); *Torres*, 318 F.3d at 1058.

anticipated that an application to toll the statute of limitations pursuant to this statute might be made ex parte.

Defendants next assert that the phrase "preponderance of the evidence," as found in § 3292(a)(1), establishes that Congress did not intend that applications made pursuant to § 3292 would be made ex parte. Defendants contend that the phrase "preponderance of the evidence," as found in § 3292(a)(1), denotes a proceeding/application that should be adversarial in nature. The Court reiterates that the plain language of the statute provides for an "application," not a "noticed application." As such, the statute's language evidences Congress' intent that the § 3292 application could be made ex parte.

■ Assuming arguendo, however, that this language does not evince Congress' intent that the application be made ex parte, Defendants' "preponderance of the evidence" argument still does not prevail. An application to toll the statute of limitations under § 3292 is a preindictment proceeding. Thus, to accept Defendants' argument that the phrase "preponderance of the evidence" establishes that the § 3292 application was not intended to be made ex parte "would be to ignore the traditionally non-adversarial and secret nature of grand jury investigations." *Id.* (citing *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). Instead, the Court reads "the phrase 'preponderance of the evidence' in section 3292(a)(1) to mean that the government has some burden to establish, as opposed to being able merely to assert without support, that the foreign evidence it seeks meets the section's requirements." *Id.*

Finally, Defendants assert that nothing in the legislative history of § 3292 suggests that ex parte filing is appropriate. As discussed *supra,* however, the Court has determined that the plain language of the statute indicates that Congress' intent

was that the application to toll the statute of limitations could be made ex parte. Accordingly, the Court need not turn to the legislative history to glean Congress' intent.

Defendants next contend that the government failed to comply with § 3292 because it did not provide anything of evidentiary value to prove that it was reasonably likely that evidence of the charged offenses was located in Barbados. Defendants' argument is again premised on the term "preponderance of the evidence," as found in § 3292. In support of their position, Defendants rely on the appellate court's ruling in *United States v. Trainor,* 376 F.3d 1325 (11th Cir.2004).

In *Trainor,* the appellate court considered the question of whether in that case the government, which had made an ex parte § 3292 application, established by a preponderance of the evidence that evidence concerning the charged offense reasonably appeared to be located in a foreign country. *Trainor,* 376 F.3d at 1327. To determine whether the government had satisfied the preponderance of the evidence standard in § 3292, the *Trainor* Court initially considered what meaning should be given to the word "evidence" as found in the phrase "preponderance of the evidence." *Id.* at 1331. In so doing, the court noted that

> Wigmore defines evidence as "any matter of fact that is furnished to a legal tribunal otherwise than by reasoning or a reference to what is noticed without proof—as the basis of inference in ascertaining some other matter of fact." 1 John Henry Wigmore, Evidence in Trials at Common Law § 1 (Tillers rev. 1983) (footnote omitted). In other words, evidence is "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove

the existence of an alleged fact." Black's Law Dictionary 576 (7th ed.1999). In addition, evidence must bear some minimum mark of trustworthiness to have any value to the trier of fact. For example, many of the Federal Rules of Evidence—such as the rules regarding hearsay, expert testimony, authentication of documentary evidence, and the oath requirement—are geared toward ensuring a degree of reliability. Thus, to have evidentiary value, the submitted material, be it testimony or documents, must tend to prove or disprove the existence of a material fact and, more importantly for our purposes, must include, or be accompanied by, some indicia of reliability.

*Id.* The court continued its analysis, explaining that the minimum threshold of reliability required will vary based on the procedural context of the proceeding. *Id.* The court proceeded to hold that the government, "when seeking to toll a statute of limitations under § 3292, [as it is an ex parte application,] must provide something with evidentiary value—that is, testimony, documents, proffers, and other submissions bearing some indicia of reliability— tending to prove it is reasonably likely that evidence of the charged offenses is in a foreign country." *Id.* at 1332. The court clarified its holding, stating that its

> reading of the § 3292 preponderance of the evidence requirement is quite broad and the Government may satisfy its burden by including a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value. Indeed, as the district court noted, the Government's evidence could even include hearsay evidence.

*Id.* at 1332–33.

The *Trainor* Court then applied its interpretation of the preponderance of the

evidence requirement to the facts in that case. The court noted that the government in *Trainor* had submitted a § 3292 application/motion and a copy of the OIA request in support of its application to toll the statute of limitations. *Id.* at 1333. The court determined that the primary problem with the government's tolling application was that there was nothing to indicate that the government's assertions, as found in the application/motion and the OIA request, were reliable. *Id.* The court reiterated that the burden is on the government to provide something of evidentiary value for the district court to evaluate. *Id.* (citing *DeGeorge*, 219 F.3d at 937 (9th Cir.2000) (stating that "the government has some burden to establish, as opposed to being able merely to assert without support, that the foreign evidence it seeks meets the section's requirements.")). The *Trainor* Court then explained that in that case "[n]o indicia of reliability, such as a verification or an affidavit, accompanied the application." *Id.* The court concluded its examination of the "evidence" which the government offered in support of the § 3292 application, stating that

> [the] mere summarization of evidence in the Government's possession ... standing alone, does not satisfy the Government's burden [ ] any more than it would in the grand jury context. Any other interpretation renders the § 3292 preponderance of the evidence standard meaningless.

*Id.* (citing *United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir.1999) (providing "that 'courts should disfavor interpretations of statutes that render language superfluous' ")) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

▉ The Court agrees with the *Trainor* Court's interpretation of the word evidence in the phrase "preponderance of the

evidence," as found in § 3292. The Court further agrees that, given that a § 3292 application is made ex parte, the government bears the burden of providing something with evidentiary value to the court. Moreover, the Court finds that the government should not be able to simply rely on the assertions in the application and/or the OIA request because no one has sworn to or attested to the veracity of those assertions. Like the *Trainor* Court, this Court believes that the government may meet its burden by providing a court with a sworn or verified application containing the necessary factual information, testimony by government officials, affidavits, declarations, exhibits, or other materials of evidentiary value. The Court therefore concurs with the *Trainor* Court's interpretation of what type of "evidence" the government, when making a § 3292 application, is required to provide to establish a sufficient indicia of reliability, such that a court may find that the government has met its burden.

In the instant case, the government filed an application/motion ex parte to toll the statute of limitations. The application/motion filed by the government in the instant action contained various assertions concerning the evidence which the government was trying to seize, as well as the efforts the government had made and continued to make to obtain the evidence. To the § 3292 application/motion, the government attached the OIA request to the Central Authority of Barbados. The request details the government's investigation and the offenses allegedly committed, and seeks the assistance of the authorities in Barbados to obtain evidence of those offenses. The OIA goes into great detail concerning the alleged offenses and the operation of IDM in Barbados. As discussed *supra*, these two documents, standing alone, cannot meet the government's burden of establishing by a preponderance of the evidence that it reasonably appears,

or reasonably appeared at the time the request was made, that evidence of the offenses alleged in the indictment were located in Barbados. A distinction, however, exists between the "evidence" offered in support of the tolling application in the instant case from the "evidence" offered in support of the tolling application in *Trainor*. In the instant action, in addition to the application/motion and the OIA request, the government attached a certified copy of an order from the High Court of Justice, Civil Division in Barbados. The order is file stamped and hand dated March 18, 1998. Moreover, the order bears a file stamp containing the words "Supreme Court of Judicature Barbados." The order provides that it relates to "the issuance and execution of search warrants at the premises of I.D.M. Direct Marketing Corporation."

Federal Rule of Evidence 1003 permits courts to admit a duplicate to the same extent as an original unless 1) a genuine question is raised to the authenticity of the original or 2) it would be unfair to admit the duplicate in lieu of the original. At the time that the § 3292 application was filed, this Court had, and continues to have, no genuine question as to the authenticity of the Barbados Court's order. The Court finds that the order of the Barbados Court is, and was, evidence capable of providing a sufficient indicia of reliability that evidence was in Barbados at the time the government filed its application to toll the statute of limitations. The Court finds therefore that the government met its burden of proving by a preponderance of the evidence that evidence of the offenses charged in the indictment existed in Barbados at the time the application to toll the statute of limitations was filed. Accordingly, for all of the reasons stated herein, the Court finds that Defendants have not established that the government failed to

comply with the provisions of 18 U.S.C. § 3292.

## B. *Constitutionality of 18 U.S.C. § 3292*

■ Having determined that § 3292 permits ex parte application by the government to toll the statute of limitations, the Court must next consider Defendants' contention that the ex parte manner in which the tolling order was granted violated their due process rights under the Fifth Amendment. Defendants argue that § 3292 is both unconstitutional on its face and as applied in this case. In support of their argument that § 3292 is unconstitutional, Defendants assert that, as a matter of due process, a defendant must be provided with some notice, other than the indictment itself, that the government has applied for a tolling order and that it has been granted. Additionally, Defendants assert that a defendant must also be provided an opportunity to contest, at a meaningful time and in a meaningful manner, the extension of the limitation period.

The Fifth Amendment right to due process prohibits the government from depriving an individual of life, liberty, or property without due process of law. Defendants contend that if § 3292 permits ex parte application, the statute violates the Fifth Amendment because a defendant must be provided notice and a hearing before the statute of limitations may be tolled.

■ To accept Defendants' interpretation that the Fifth Amendment requires that the defendant be provided notice and an opportunity to be heard upon the filing of a § 3292 application, however, "would penalize the government for a lack of omniscience as to who was involved in offenses under investigation." *Neill,* 952 F.Supp. at 834. Because the matter is still under investigation, "the government has no control over who might be involved in

the offense under investigation." *Id.* "A foreign evidence request for offenses under investigation may identify persons who are involved in the offenses, but who were previously unknown to the government. In 18 U.S.C. § 3292, Congress focused on the offense, not the offender." *Id.* Moreover,

> [a]n accused does not acquire any vested right in a statute of limitations until it has operated to bar the prosecution of the offense with which he has been charged. He may not complain if the statute of limitations is extended so long as the period of time originally provided therein had not run at the time of such extension.

*United States v. Haug,* 21 F.R.D. 22, 25 (N.D.Ohio 1957) (citations omitted), aff'd 274 F.2d 885 (6th Cir.1960), cert. denied, 365 U.S. 811, 81 S.Ct. 688, 5 L.Ed.2d 691 (1961). In the instant case, the statute of limitations was extended/tolled before the statute of limitations provided in 18 U.S.C. § 3282 had run. Given, therefore, that no indictment is issued at the time an application is made pursuant to § 3292 to toll the statute of limitations and that the statute of limitations is tolled/extended prior to the running of the statute of limitations, it logically follows that the Fifth Amendment right to due process has not attached to a defendant when an application is made pursuant to 18 U.S.C. § 3292. Furthermore, because Defendants in the instant action had not yet been indicted and the statute of limitations had not yet run pursuant to 18 U.S.C. § 3282, Defendants' Fifth Amendment right to due process had not attached. The Court finds, therefore, that § 3292 is not unconstitutional on its face or as applied.

## C. *Evidentiary Hearing*

■ Defendants additionally assert that, pursuant to *United States v. Wilson,* 249 F.3d 366 (5th Cir.2001), they are entitled

to an evidentiary hearing on whether the government complied with 18 U.S.C. § 3292. In *Wilson*, the court determined that the district court erred in dismissing the defendant's motion to dismiss without a hearing and remanded the case to the district court to determine whether the government made an official request pursuant to 18 U.S.C. § 3292. *Wilson*, 249 F.3d at 372–73. The *Wilson* Court reasoned that a hearing should have been conducted because the evidence asserted by the defendant raised a factual issue as to whether the request was sent. *Id.* at 372. In the instant case, Defendants assert *inter alia* that the government has not established whether Barbados has or has not taken final action as contemplated by § 3292(b). A motion to compel is currently pending in this case, wherein Defendants seek to obtain evidence to establish that the government did not meet the requirements of § 3292. The Court finds that a hearing as to whether the government complied with the requirements of § 3292 is appropriate based on Defendants' arguments. The Court, therefore, grants Defendants' request for a hearing. A hearing date will be scheduled after the ruling on the motion to compel.

## III. *CONCLUSION*

For the above-stated reasons, Defendants' motions to dismiss the indictment are **DENIED**. The Court **GRANTS**, however, Defendants' request for a hearing as to whether the government complied the requirements of 18 U.S.C. § 3292.