### UNITED STATES of America

v.

### Denis M. NEILL, James P. Neill, Defendants.

### Crim. Action No. 95–0323 (JHG).

United States District Court, District of Columbia.

Sept. 24, 1996.

---

Richard A. Poole, U.S. Department of Justice, Criminal Division, Fraud Section, Washington, DC, John E. Sullivan, U.S. Department of Justice, Criminal Section, Tax Division, Washington, DC, for the U.S.

John Martin Bray, Joseph Martin Jones, Schwalb, Donnenfeld, Bray & Silbert, P.C., Washington, DC, for Denis M. Neill.

Charles Taylor Smith, II, Ober, Kaler, Grimes & Shriver, Baltimore, MD, Martha Purcell Rogers, Hartman E. Blanchard, Ober, Kaler, Grimes & Shriver, Washington, DC, for James P. Neill.

## *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently pending are the Defendants' Motion to Dismiss Counts Two Through Five of the Indictment as Barred by the Statute of Limitations and Defendant James P. Neill's Motion to Dismiss Counts Two and Four of the Indictment as Barred by the Statute of Limitations ("Statute of Limitations Motions"). For the reasons explained below, the Statute of Limitations Motions will be granted in part and denied in part.

### Background

The defendants were corporate officers and directors of Defense Marketing Services, Inc., ("DMS"), a U.S. corporation formed for the purpose of providing and rendering defense marketing services to Kamel Fattah ("Fattah"). Fattah, who died in 1993, was a retired Egyptian Army general engaged in the sale of defense related products and services. In 1985, Fattah and DMS entered into a retainer agreement whereby DMS would provide consulting services and, in return, receive one-third of Fattah's gross profits. As a result of DMS's efforts, Fattah entered into six contracts, which entitled DMS to approximately $4,800,000 as of November of 1986. During that same month, Fattah agreed to purchase DMS for approximately $4,800,000. Upon acquiring DMS, he altered his contractual obligation to DMS,

agreeing to pay an annual retainer plus bonuses.

The Neills were also involved in other business ventures with Fattah. The government alleges that one of these ventures was Glenbrook Development Corporation, a real estate investment and management firm formed in 1988 in the District of Columbia.

The United States began investigating the Neills no later than January of 1991. During the investigation, the government made a series of requests to foreign governments for evidence. Those requests are central to resolving the Statute of Limitations Motions, and they are discussed chronologically.

The first request was made on January 10, 1991, when, upon application by the government, the United States District Court for the District of Columbia issued a "Request for Judicial Assistance to the United Kingdom in Misc. No. 91–004, GJ 90–2, *In re* Charles Gladson, Denis Neill and Warfield, Inc." *See* Defendants' Memorandum, at Appendix C.1. The Request for Judicial Assistance relied upon the attached Application of the United States, which detailed the offenses being investigated:

> The attorneys for the United States are investigating ... Denis Neill for possible violations of the United States Criminal Code, Title 18, Sections 1957 and 1956 (Money Laundering), 208, 207 and 203 (Conflicts of Interest) and 201 (Bribery or Gratuity), as well as for possible violations of the United States Criminal Code, Title 31, Section 5314 (Reports on Foreign Financial Agency Transactions).

Application of the United States for the Court to Request the Assistance of the Judiciary of the United Kingdom, attached to Defendants' Memorandum, at Appendix F.

Because the United Kingdom provided only some of evidence requested, the government made follow-up requests. On October 29, 1992, the government made a "Supplemental Request for Assistance in [re] Charles Gladson, Denis Neill and Warfield, Inc." *See* Department of Justice Letter to United Kingdom Central Authority (Oct. 29, 1992), attached to Defendants' Memorandum, at Appendix C.2. What was the basis for the investigation? Once again, the United States explained that it was investigating money laundering, bribery or gratuity, conflicts of interest and foreign financial reporting. *Id.* at 2.

On March 10, 1993, the United States requested the assistance of the Bermuda Minister of Finance in obtaining bank records. *See* Internal Revenue Service Letter to Dr. David J. Saul, Minister of Finance, Bermuda (Mar. 10, 1993), attached to Defendants' Memorandum, at Appendix C.4. The letter expressly identified Defendants Denis Neill and James Neill as the subjects of criminal tax investigations for offenses alleged to have been committed in tax years 1985 through 1991. *Id.* at 1. Follow-up letters were sent to Bermuda in 1994 requesting information that had been requested but which had not been provided. *See* Internal Revenue Service Letter to Dr. David J. Saul, Minister of Finance, Bermuda (March 22, 1994); Internal Revenue Service Letter to Dr. David J. Saul, Minister of Finance, Bermuda (March 4, 1994).

On April 26, 1993, a second follow-up letter was sent to the United Kingdom regarding evidence previously requested from three banks: the National Bank of Egypt, Lloyds Bank and Credit Lyonnais London. *See* Department of Justice Letter to United Kingdom Central Authority (Apr. 26, 1993), attached to Defendants' Memorandum, at Appendix C.3. This letter also described the criminal offenses for which Denis Neill was being investigated as "money laundering, bribery, Reports on Foreign Financial Agency Transactions, theft of government property, and conflict of interest." *Id.* at 1. None of the allegations included violations of the Internal Revenue Code.

On March 18, 1994, the United States sent the United Kingdom a "Supplemental Request for Assistance in the Prosecution of Denis Neill, Warfield, Inc., James Neill, Denis Neill, P.C., and Neill and Company." *See* Department of Justice Letter to the United Kingdom Central Authority (Mar. 18, 1994), attached to Defendants' Memorandum, at Appendix C.5. As before, the government identified evidence that had been requested but which had not been received, and it made

a supplemental request for records that had been identified during the course of the investigation. *Id.* at 1. For the first time, the government advised the United Kingdom that it was also seeking foreign evidence involving both Denis Neill and James Neill for alleged violations of 18 U.S.C. § 1505 (obstruction of justice), 18 U.S.C. § 1001 (false statements), criminal tax violations under 26 U.S.C. §§ 7201, 7206, and a violation of 15 U.S.C. § 78dd, the Foreign Corrupt Practices Act.

Also on March 18, 1994, pursuant to 18 U.S.C. § 3292, the government filed an application with the U.S. District Court for the District of Columbia to suspend the statute of limitations "applicable to all offenses under investigation in the above captioned matter to enable the United States to obtain evidence located in the United Kingdom and Bermuda which is the subject of official requests for assistance to foreign authorities." U.S. Motion for Suspension of Statute of Limitations and to Seal, Filed Ex parte and In Camera, GJ No. 92–2, attached as Appendix C to the Defendants' Memorandum. On March 21, 1994, Chief Judge Penn granted the motion and entered his order. *See* Defendants' Memorandum, at Appendix B.

The government concedes that the United Kingdom took final action on July 4, 1995, when it provided the evidence requested, *see* Government's Consolidated Response to Defendants' Motions to Dismiss Based on the Statute of Limitations, at 3 & 12, and the record indicates that Bermuda took final action on April 12, 1994, when it certified that it had provided all of the information in its possession that the United States had requested. *See* Government's Notice Regarding Evidence Requested From the Government of Bermuda, at Exhibits 4 & 5 (Bermuda Ministry of Finance Letter (Apr. 12, 1994) with certification from the Bank of Bermuda, Ltd. (Apr. 7, 1994)).

On December 13, 1995, a seven-count Indictment was returned, comprised of six tax counts and one count of obstruction of justice.

## Discussion

The Statute of Limitations Motions attack four of the six tax counts in the seven-count Indictment. Count Two of the Indictment charges both defendants with attempted tax evasion in violation of 26 U.S.C. § 7201 (1994) in connection with a corporate tax return due to be filed on December 15, 1987, and for which the statute of limitations would normally have expired on December 15, 1993. *See* 26 U.S.C. § 6531(2). Defendant Denis Neill is charged in Count Three with tax evasion in connection with his individual tax return for calendar year 1986. This 1986 individual return was due on April 15, 1987, and, therefore, the statute of limitations would normally have expired on April 15, 1993. *See* 26 U.S.C. § 6531(2). Count Four charges Defendant James Neill with making and subscribing a false return in violation of 26 U.S.C. § 7206(1) in connection with a fiduciary return filed on or about July 20, 1987, for the fiscal year ending March 31, 1987. Count Five charges Defendant Denis Neill under 26 U.S.C. § 7206(2) with aiding in the preparation of that same return. The statute of limitations for both of these counts would have normally expired on July 20, 1993. *See* 26 U.S.C. §§ 6531(3), (5).

The issue before the Court is whether the tolling provisions of 18 U.S.C. § 3292 preserved the viability of Counts Two through Five. The defendants contend that these counts are time-barred. The government, however, argues that the statutes of limitations were properly tolled under 18 U.S.C. § 3292 due to its 1991 request for evidence to the United Kingdom.

In recognition of the difficulties faced by prosecutors in investigating and prosecuting financial crimes involving foreign banks, Congress enacted Part K of Chapter XII of the Comprehensive Crime Control Act of 1984, Pub.L. No. 473, 98th Cong., 2nd Sess., 98 Stat. 2167 (Oct. 12, 1984). *See* H.R.Rep. No. 907, 98th Cong., 2nd Sess. 2–3 (July 25, 1984); *United States v. Davis,* 767 F.2d 1025, 1037 (2d Cir.1985); Ethan A. Nadelmann, *The Role of the United States in the International Enforcement of Criminal Law,* 31 Harv. Int'l L.J. 37, 61 n. 34 (1990); Paul M. Junghans, *The I.R.S. and Foreign Evidence,* C481 ALI–ABA 323, at § 1.07, at 347 (1989). Included among the federal prosecutor's new tools was a mechanism to toll the running of

the statute of limitations based on an official request to a foreign government for evidence of an offense under investigation by a grand jury. *See* Comprehensive Crime Control Act of 1984, *supra*, at § 1218(a), codified at 18 U.S.C. § 3292.

Under 18 U.S.C. § 3292, a district court must suspend the statute of limitations for an offense under investigation by a grand jury if the court determines that an official request for evidence of the offense has been made to a foreign government, and "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3292(a);[1] *see* H.R.Rep. No. 907, *supra*, at 7. Official requests are defined broadly: "a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign government." 18 U.S.C. § 3292(d).

The period of suspension begins on the date of the official request, and it ends on the date that the foreign authority takes final action. *Id.* § 3292(b).[2] However, this general provision is limited in two respects. First, the total of all periods of suspension for an offense shall not exceed three years. *Id.* § 3292(c)(1). Second, when all foreign authorities take final action before the normal expiration of the statute of limitations, the time of tolling is limited to six months. *Id.* § 3292(c);[3] *see United States v. Bischel,* 61 F.3d 1429, 1433 (9th Cir.1995). (Neither of these limitations is relevant in this case.)

The defendants argue that the government's application to Chief Judge Penn on March 18, 1994 was untimely—it was made after the statutes of limitations had expired, and, according to the defendants, 18 U.S.C. § 3292 cannot revive an expired statute of limitations. However, contrary to the defendants' argument, the statutes of limitations were tolled by the official request to a foreign government, not by the government's application to the Court. *See* 18 U.S.C. § 3292(a); *Bischel,* 61 F.3d at 1434; *United States v. Miller,* 830 F.2d 1073, 1076 (9th Cir.1987), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988).

On the other hand, the government contends that the statutes of limitations on the tax counts were tolled by its 1991 official request to the United Kingdom for evidence of offenses other than tax violations. However, this interpretation of 18 U.S.C. § 3292 is flawed because the plain text of the statute is offense-specific:

> Upon application of the United States filed before return of an indictment, indicating that *evidence of an offense* is in a foreign country, the district court before which a grand jury is impaneled to investigate *the offense* shall suspend the running of the statute of limitations *for the offense* if the court finds by a preponderance of the evidence that *an official request has been made for such evidence* and that it reasonably appears or reasonably appeared at the time the request was made that *such evidence* is, or was, in such foreign country.

18 U.S.C. § 3292(a) (emphasis added).

Contrary to the government's interpretation of 18 U.S.C. § 3292, a request for

---

**1.** 18 U.S.C. § 3292(a)(1) provides:

(a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

**2.** 18 U.S.C. § 3292(b) provides:

Except as provided in subsection (c) of this section, a period of suspension under this sec-

tion shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

**3.** 18 U.S.C. § 3292(c) provides:

(c) The total of all periods of suspension under this section with respect to an offense—

(1) shall not exceed three years; and
(2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

evidence of an offense(s) to a foreign government does not suspend the statute of limitations for every possible offense—only for those offense(s) under investigation by the grand jury and for which foreign evidence has been officially requested.[4] To interpret this statute otherwise would not only be contrary to its plain text, but it would grant unbridled discretion to the government and make statutes of limitations virtually meaningless as long as a request for foreign evidence had been made regarding *any* offense—no matter how remote that offense might be from the offense or offenses under investigation. While Congress could have drafted the statute so broadly, it did not. To adopt the government's view, this Court would be required to substitute new, broader language for the words that Congress selected. Neither the text nor the legislative history supports the government's expansive interpretation, and it is rejected.[5]

■ Nor does the statute automatically grant a three-year extension from the date of the official request. Unless all foreign authorities take action before the end of the limitations period or periods, the suspension ends "on the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b); *see Bischel*, 61 F.3d at 1433. While Subsection 3292(c) sets an absolute three-year limit beyond which the limitations period may no longer be suspended, it does not suspend every period for three years merely because an official request has been made. An official request *suspends* the statute of limitations, but once the last foreign government takes final action, the statute of limitations begins to run again.

In this case, the applicability of § 3292 was triggered by the official request made to the Government of Bermuda on March 10, 1993.

The request unambiguously sought foreign evidence involving tax violations by both defendants. Consequently, under § 3292(b), the statute of limitations as to each tax count was *suspended* on March 10, 1993: Therefore, Count II was suspended with nine months and five days remaining in its limitations period; Count III was suspended with one month and five days remaining; and Counts IV and V were suspended with four months and 10 days remaining.

The Court rejects the government's argument that the official requests to the United Kingdom in 1991, 1992 or 1993 suspended the statute of limitations for the tax counts, because those requests did not request foreign evidence regarding tax violations. As reflected in its own correspondence, the government did not advise the United Kingdom until March 18, 1994 that it was seeking foreign evidence relating to any offenses other than money laundering, bribery or gratuity, conflicts of interest, theft of government property and foreign financial reporting. The earlier requests to the United Kingdom were simply barren of any mention of criminal tax offenses. However, on March 18, 1994, while the respective statutes of limitations were tolled as a result of the Bermuda request, the United States did request foreign evidence from the United Kingdom regarding tax violations by the defendants.

■ Suspended by the official request to Bermuda, the statutes of limitations remained suspended until the last foreign authority took final action. 18 U.S.C. § 3292(b). Here, Bermuda took its final action on April 12, 1994, and the United Kingdom took final action on July 4, 1995, terminating the suspension. So revived, the statutes of limitations began to run again on July 4, 1995: nine months and five days

---

4. The government's own training materials appear to recognize this. *See* Attorney General's Advocacy Institute, *Evidence for Experienced Criminal Litigators*, at E–16, Foreign Evidence Requests ("You can't request [foreign evidence] for one prosecution and use [it] for another."), attached to Defendants' Reply, at Exhibit 1.

5. The case law upon which the government relies, *United States v. Roshko*, 969 F.2d 9 (2d Cir.1992), is unpersuasive. Whether § 3292 allows for the tolling of any and all possible offenses based upon a foreign evidence request regarding a specific offense was simply not an issue before the Second Circuit in *Roshko*. Moreover, it is not clear that the district judge made the broad ruling that the government implies, because the opinion fails to quote or elaborate upon the unpublished § 3292 order, let alone discuss the underlying reasoning. *See id.* at 12.

remained on Count II, making the new expiration date April 9, 1996; one month and ten days remained on Count III, making August 10, 1995 the expiration date; and four months and ten days remained on Counts IV and V, establishing November 14, 1995 as the expiration date. Because the Indictment was not returned until December 13, 1995, after the statutes of limitations for Counts III, IV and V had expired, those counts are time barred.

### Conclusion

Accordingly, for the reasons stated above, it is

**ORDERED** that the Statute of Limitations Motion is granted in part; Counts III, IV and V of the Indictment are dismissed with prejudice as barred by their statutes of limitations; and it is

**FURTHER ORDERED** that the motion is denied as to Count II.

IT IS SO ORDERED.