07-3107-cr
United States v. Kozeny (Bourke)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: October 18, 2007          Decided: August 29, 2008)

Docket No. 07-3107-cr

-------------------------------------

UNITED STATES OF AMERICA,

Appellant,

- v -

VIKTOR KOZENY, DAVID PINKERTON,

Defendants,[*]

FREDERIC BOURKE JR.,

Defendant-Appellee.

-------------------------------------

Before:   SACK, KATZMANN, and HALL, Circuit Judges.

Appeal by the government from a judgment of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) dismissing several counts of an indictment.  The district court concluded that an application

---

[*]    Viktor Kozeny and David Pinkerton were both named as defendants in the indictment.  Kozeny, a resident of the Bahamas, is appealing an order committing him to extradition to the United States and is therefore not a party to this appeal.  See United States v. Kozeny, No. 1:05-cr-00518-SAS (S.D.N.Y. Apr. 17, 2007) (minute entry).  Pinkerton was initially an appellant, but the government withdrew all charges against him after this appeal was argued.  See United States v. Kozeny, No. 1:05-cr-00518-SAS (S.D.N.Y. July 2, 2008) (order of nolle prosequi as to Pinkerton).  The government's appeal as to Pinkerton was withdrawn by stipulation filed July 16, 2008.

pursuant to 18 U.S.C. § 3292 to suspend the running of a statute of limitations pending a request for foreign evidence must be filed before the statute of limitations expires.

Affirmed.

JONATHAN S. ABERNETHY, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Jonathan S. Kolodner, Assistant United States Attorney, New York, NY, on the brief, Robertson Park, Assistant Chief, Fraud Section, United States Department of Justice, Washington, DC, of counsel), New York, NY, for Appellant.

EMILY STERN, Proskauer Rose LLP (Robert J. Cleary, Dietrich L. Snell, Proskauer Rose LLP, New York, NY, and Dan K. Webb, Gene C. Schaerr, J. David Reich, Jr., Winston & Strawn LLP, Chicago, IL, on the brief), New York, NY, for Defendant-Appellee.

SACK, Circuit Judge:

The government appeals from a judgment of the United States District Court for the Southern District of New York granting defendant-appellee Frederic Bourke Jr.'s motion to dismiss as to most of the counts on which he had been indicted. The court concluded that the charges against him in those counts were barred by the statute of limitations. The government had previously applied for, and had been granted, a suspension of the applicable statute of limitations pursuant to 18 U.S.C. § 3292. The district court held that this suspension was invalid because the government's application was filed after the limitations period for the crimes under investigation had expired. The court

2

concluded that although the statutory text was ambiguous, the legislative history of section 3292, the structure of the provision, the policy rationale behind statutes of limitations, and the doctrine of constitutional avoidance all pointed toward an interpretation of section 3292 that does not permit the government to apply to suspend a statute of limitations after the limitations period has expired.

Unlike the district court, we do not view the text of section 3292 as ambiguous. We conclude that the plain language of the provision, and the structure and content of the law by which it was enacted, require the government to apply for a suspension of the running of the statute of limitations before the limitations period expires. We therefore affirm.

**BACKGROUND**

In a sealed indictment returned on May 12, 2005, defendant-appellee Frederic Bourke Jr. was charged with five counts of violating the Foreign Corrupt Practices Act (the "FCPA"), 15 U.S.C. § 78dd-1 et seq.; two counts of violating the Travel Act, 18 U.S.C. § 1952; one count of conspiracy to violate the FCPA and the Travel Act, 18 U.S.C. § 371; two counts of money laundering, 18 U.S.C. § 1956; one count of conspiracy to commit money laundering, 18 U.S.C. § 371; and one count of making false statements to FBI agents in violation of 18 U.S.C. § 1001. The charges all relate to an alleged scheme to bribe senior government officials in Azerbaijan in an effort to ensure the

3

privatization of the State Oil Company of the Azerbaijan Republic and to guarantee that Bourke profited from this privatization.

The parties do not dispute that 18 U.S.C. § 3282(a) establishes the statute of limitations for all of the crimes that Bourke is alleged to have committed. Under that provision, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." Id.

The counts charging violations of the Travel Act and the money laundering statute, and four of the five counts charging violations of the FCPA, allege conduct that occurred no later than early July 1998. Barring any tolling or other suspension of the statute of limitations, then, the five-year limitations period for each of these offenses would have expired in early July 2003. The fifth count charging violations of the FCPA alleges conduct that occurred in September 1998. The statute of limitations for that charged crime would have run in September 2003.

The conduct related to the charge of making false statements occurred in or before May 2002. Barring any tolling or other suspension of the statute of limitations, the five-year limitations period for that offense would have run in or before May 2007.

4

Finally, the conduct related to the conspiracy charges continued until September 1998 for the money laundering conspiracy and until February 1999 for the FCPA and Travel Act conspiracy. Barring any tolling or other suspension of the statute of limitations, the five-year limitations periods for these offenses would have expired in September 2003 and February 2004, respectively.

Prior to the indictment, the government submitted requests to the governments of the Netherlands and Switzerland for evidence relating to activity it was investigating. Each request was made pursuant to a treaty on mutual legal assistance ("MLAT"). See Treaty on Mutual Assistance in Criminal Matters, U.S.-Neth., June 12, 1981, 1359 U.N.T.S. 209; Treaty on Mutual Assistance in Criminal Matters, U.S.-Switz., May 25, 1973, 1052 U.N.T.S. 61. The request to the Netherlands was made on October 29, 2002; the request to Switzerland on January 13, 2003. On July 21, 2003, the government applied for an order under 18 U.S.C. § 3292 to suspend the running of the statute of limitations based on its MLAT requests. At that point the statute of limitations had run for all of the crimes under investigation other than the false statements charges, the conspiracy charges, and one FCPA count.

Section 3292 provides:

> (a)
>
> (1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the

5

district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

(2) The court shall rule upon such application not later than thirty days after the filing of the application.

(b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

(c) The total of all periods of suspension under this section with respect to an offense --

(1) shall not exceed three years; and

(2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

(d) As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

18 U.S.C. § 3292.

On July 22, 2003, the district court (George B. Daniels, Judge) entered a sealed order suspending the statute of limitations for the offenses under investigation. Pursuant to 18

U.S.C. § 3292(b), the district court ordered that "the periods of suspension shall begin on the dates on which the official requests were made and shall end on the date on which the authorities of the Governments of the Netherlands and the Swiss Confederation take final action on the official requests, such periods not to exceed a total of three years." The Swiss authorities produced documents in response to the MLAT on several dates, the last of which was September 10, 2004. The Dutch authorities produced documents on November 8, 2005. As noted, the indictment was returned on May 12, 2005, after the date on which Switzerland took final action but before the date on which the Netherlands took final action. Because the suspension of the running of the statute of limitations was to "end on the date on which the authorities of the Governments of the Netherlands and the Swiss Confederation [took] final action" (emphasis added), at the time of the indictment, the statute of limitations was still ostensibly suspended on account of the outstanding MLAT request to the Netherlands.

On October 20, 2006, Bourke filed a motion to dismiss all but the false statements charges on statute of limitations grounds pursuant to Rule 12 of the Federal Rules of Criminal Procedure. He argued that section 3292 does not permit the government to apply for a suspension of the statute of limitations after it has already expired. The district court (Shira A. Scheindlin, Judge) granted Bourke's motion, dismissing all but the false statements charges. The district court held

7

that although the statutory text was "ambiguous," the legislative history of section 3292, the structure of the provision, the policy rationale behind statutes of limitations, and the doctrine of constitutional avoidance all pointed toward an interpretation that does not permit the government to apply to suspend the statute of limitations after it has expired.

On July 16, 2007, the district court reinstated all of the conspiracy charges and one FCPA count against Bourke on the grounds that the statute of limitations had not run for these charges when the section 3292 application was filed. That order is not before us on appeal.

The government appeals the district court's judgment insofar as it dismissed charges against Bourke on statute of limitations grounds.

**DISCUSSION**

Federal court interpretations of 18 U.S.C. § 3292 are sparse.[1] Only two decisions -- neither of them ours -- speak to

---

[1] See United States v. Atiyeh, 402 F.3d 354, 362-67 (3d Cir.) (application must be filed before government has received all requested foreign evidence), cert. denied, 546 U.S. 1068 (2005); United States v. Trainor, 376 F.3d 1325, 1330 (11th Cir. 2004) (interpreting "preponderance of the evidence" standard in subsection 3292(a)); United States v. DeGeorge, 380 F.3d 1203, 1215 (9th Cir. 2004) ("'Final action' for purposes of § 3292 means a dispositive response from the foreign sovereign . . . ." (citations and internal quotation marks omitted)); United States v. Torres, 318 F.3d 1058, 1063 (11th Cir.) (same), cert. denied, 540 U.S. 827 (2003); DeGeorge v. U.S. Dist. Court for the Cent. Dist. of Cal., 219 F.3d 930, 937, 939-41 (9th Cir. 2000) (holding, under a standard of review for mandamus petitions, inter alia, that district court did not clearly err in concluding that section 3292 allows ex parte applications and does not require that a grand jury be impaneled and hearing evidence on

8

the question presented here.  Both, United States v. Bischel, 61 F.3d 1429 (9th Cir. 1995), and United States v. Neill, 940 F. Supp. 332 (D.D.C.), vacated on other grounds, 952 F. Supp. 831 (D.D.C. 1996), found that section 3292 imposed no requirement that the government apply for a suspension of the statute of limitations before the statute of limitations has run.  We disagree.

I. Standard of Review

This court reviews a district court's statutory interpretation de novo.  United States v. Rood, 281 F.3d 353, 355 (2d Cir. 2002).

II. Principles of Statutory Construction

Statutory construction "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." United States v. Albertini, 472 U.S. 675, 680 (1985) (quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985)).  Where the statute's language is "plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)

the target offenses at time of application); United States v. Meador, 138 F.3d 986, 992 (5th Cir. 1998) (holding that "a determination of when 'final action' has been taken by a foreign government, within the meaning of § 3292(b), must turn on whether a dispositive response to an official request for evidence from our government has been obtained"); United States v. Miller, 830 F.2d 1073, 1075-76 (9th Cir. 1987) (section 3292 is retroactive as to offenses committed before its enactment and does not require the government to file an application before obtaining evidence), cert. denied, 485 U.S. 1033 (1988).

(quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)); see also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Statutory enactments should, moreover, be read so as "to give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001) (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1955)); see also United States v. Nordic Vill., Inc., 503 U.S. 30, 36 (1992) (noting "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"); United States v. Anderson, 15 F.3d 278, 283 (2d Cir. 1994) ("[C]ourts will avoid statutory interpretations that render provisions superfluous." (citations omitted)). And "[t]he 'whole act' rule of statutory construction exhorts us to read a section of a statute not 'in isolation from the context of the whole Act' but to 'look to the provisions of the whole law, and to its object and policy.'" United States v. Pacheco, 225 F.3d 148, 154 (2d Cir. 2000) (quoting Richards v. United States, 369 U.S. 1, 11 (1962) (internal quotation marks omitted)), cert. denied, 533 U.S. 904 (2001).

If the text of the statute itself is not clear, however, a court applying the statute may consult the legislative history to discern "the legislative purpose as revealed by the history of the statute." Concrete Pipe & Prods. of Cal., Inc. v.

10

Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 627 (1993). "Our obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result." Johnson v. United States, 529 U.S. 694, 710 n.10 (2000) (citations omitted).

When interpreting a code provision related to a statute of limitations, we adhere to "the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." Toussie v. United States, 397 U.S. 112, 115 (1970) (citations and internal quotation marks omitted); accord United States v. Podde, 105 F.3d 813, 819-20 (2d Cir. 1997). This rule comports with the policy rationale behind such statutes by (1) "protect[ing] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time," (2) "minimiz[ing] the danger of official punishment because of acts in the far-distant past," and (3) "encouraging law enforcement officials promptly to investigate suspected criminal activity." Toussie, 397 U.S. at 114-15.

III. The Meaning of Section 3292

A. "Plain Language"

Bourke argues that, under section 3292, an application to "suspend the running" of the statute of limitations must be filed before the statute of limitations has expired. 18 U.S.C. § 3292(a)(1). The government maintains to the contrary that the timing of an application is constrained only by the requirement that it be filed "before return of an indictment." Id. Both

11

parties argue that their interpretation of section 3292 is required by the language of the statute.

Subsection 3292(a)(1) states:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall <u>suspend</u> the <u>running</u> of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

<u>Id.</u> (emphasis added). We think that the words "suspend" and "running" require that we agree with Bourke.

It seems to us unnecessary to canvas entries in general dictionaries,[2] or specialized legal ones,[3] or even to inquire into the case law surrounding the "Suspension Clause,"[4] to conclude that "to suspend" is to cause to stop, at least for a time, something that is otherwise in operation or effect. And a statute of limitations is only in operation or effect if it is running. It is equally obvious, we think, that a statute of limitations cannot be "running" if it has already "run," i.e., if

---

[2] <u>See, e.g.,</u> <u>Random House Webster's Unabridged Dictionary</u> 1917 (2d ed. 2001) (defining "suspend" as "to cause to cease for a time from operation or effect").

[3] <u>See, e.g.,</u> <u>Black's Law Dictionary</u> 1487 (8th ed. 2004) (defining "suspend" as "[t]o interrupt; postpone; defer").

[4] U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

it has expired at the end of the prescribed period.[5]  It follows that a district court can "suspend the running of [a] statute of limitations," 18 U.S.C. § 3292(a)(1), only if the limitations period has not yet expired.  To restart the running of an expired statute of limitations would be to "revive" it.  We see no basis upon which to read the word "suspend" in section 3292 to include the distinct concept of revival.[6]

The government urges upon us the opposite conclusion by arguing that the only time limit explicitly set by the statute is the requirement that the application be "filed before return of an indictment."  Id.  But a requirement that the application be filed before the return of the indictment and a requirement that it be filed before the statute of limitations runs are not mutually exclusive.  In the normal course of a criminal prosecution, an indictment must, of course, be handed up before the statute of limitations expires.  Indeed, the same code provision establishing the statute of limitations for the crimes

---

[5] See Black's Law Dictionary 1361 (8th ed. 2004) (defining "run" as having "expire[d] after a prescribed period").

[6] Compare Stogner v. California, 539 U.S. 607, 632-33 (2003) (concluding that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution" (emphasis added)), with Bridges v. United States, 346 U.S. 209, 222 (1953) (concluding that 18 U.S.C. § 3287 "suspend[s] the running of . . . [a] statute of limitations . . . only where fraud against the Government is an essential ingredient of the crime [alleged]" (emphasis added)); see also Black's Law Dictionary 1346 (8th ed. 2004) (defining "revival" as, inter alia, "the act of restoring . . . validity or legal force").

13

at issue in this appeal defines that time period by reference to the window in which such an indictment must be returned. See 18 U.S.C. § 3282 (providing that "[e]xcept as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years after such offense shall have been committed"). Because indictment ordinarily precedes the expiration of the statute of limitations period, then, the words "before return of an indictment" actually imply a time frame before the statute of limitations has run.

The government's reliance on United States v. Miller, 830 F.2d 1073 (9th Cir. 1987), cert. denied, 485 U.S. 1033 (1988), is misplaced. The Miller court said that "[t]he statute itself specifies the only relevant time the application must be made: 'before return of an indictment.'" Id. at 1076 (quoting 18 U.S.C. § 3292(a)(1)). However, the Miller court sought to resolve the question of whether a section 3292 application can be filed after evidence from a foreign government has already been received, not whether such an application can be filed after the statute of limitations has run. Indeed, the section 3292 application in Miller was filed before the statute of limitations would have otherwise expired. Id. at 1075. Miller, therefore, does not speak to the question posed here.[7]

---

[7] For the same reasons we think Miller inapposite, we think that Bischel and Neill, which relied on Miller, carry little persuasive force. Like the government, the Bischel and Neill courts reasoned that because, according to Miller, a section 3292

14

The government's final textual argument looks to subsection 3292(b), which provides that the "period of suspension . . . shall begin on the date on which the official request [for evidence from the foreign nation] is made and end on the date on which the foreign court or authority takes final action on the request."  18 U.S.C. § 3292(b).  The government argues that because the period of suspension begins "on the date the official request [for evidence] is made" and not on the date that the application for a suspension is granted, section 3292 contemplates retrospective tolling.[8]  The government further maintains that there is nothing in the language of subsection 3292(b) to suggest that such tolling cannot be effective even after the limitations period has run.  In making this argument, the government relies on <u>Bischel</u> and <u>Neill</u>, which cite subsection

application is limited only by the requirement that it be filed before the return of an indictment, <u>see</u> <u>Miller</u>, 830 F.2d at 1076, it need not be filed before the statute of limitations runs.  <u>See</u> <u>Bischel</u>, 61 F.3d at 1434; <u>Neill</u>, 940 F. Supp. at 336.  However, because <u>Miller</u> did not consider whether an application must be filed before the statute of limitations has expired, the <u>Bischel</u> and <u>Neill</u> courts' reliance on that decision was misplaced.

[8] The court must rule upon an application filed under section 3292 "not later than thirty days after the filing of the application."  18 U.S.C. § 3292(a)(2).  Accordingly, there could be a scenario in which the government files an application under section 3292 before the statute of limitations has expired but the court does not rule on that application until after the expiration of the limitations period.  Because we are not confronted with that scenario in the instant case, we address only whether an application under section 3292 must be filed before the statute of limitations has expired and not whether the district court must also rule on such application before expiration of the limitations period.

15

3292(b) for the same proposition.  See Bischel, 61 F.3d at 1434; Neill, 940 F. Supp. at 336.

We find this reasoning unpersuasive.  The fact that the statute requires a retroactive start date for the suspension period does not speak to whether applications for a suspension must be filed before the statute of limitations has otherwise run.  We find nothing inconsistent about section 3292 requiring that applications to suspend the statute of limitations be filed before the statute of limitations has expired and also requiring that the starting date of the suspension period be backdated to the day on which the request for foreign evidence was made.  When interpreting a statute, we are required "to give effect, if possible, to every clause and word of a statute," Duncan, 533 U.S. at 174 (citations and internal quotation marks omitted), and to "avoid statutory interpretations that render provisions superfluous," Anderson, 15 F.3d at 283.  We therefore consider the language of subsection 3292(b), which requires the court to start the suspension period retroactively on the date the evidence was requested, together with subsection 3292(a), which, as we have said, contemplates that a statute of limitations be "running" at the time an application for suspension is filed.  We will not adopt a statutory interpretation that would render superfluous the timing provision of subsection 3292(a) when it can be read consistently with the retroactive start date requirement of subsection 3292(b).

We therefore conclude that the "plain language" of 18 U.S.C. § 3292 requires that an application to suspend the running of the statute of limitations be filed before the limitations period has expired.[9]

## B.   The "Whole Act" Rule

We also reject the government's reading of section 3292 on account of the "whole act" rule, which "exhorts us to read a section of a statute not 'in isolation from the context of the

_____

[9] The legislative history of section 3292 is meager.  It consists of a single House Report.  H.R. Rep. 98-907 (1984), reprinted in 1984 U.S.C.C.A.N. 3578.  Referring broadly to the motivation for the Comprehensive Crime Control Act of 1984, the Report notes:

> The use of offshore banks to launder the proceeds of criminal activities and to evade taxes has become an increasing problem for federal prosecutors. . . .  Once funds are traced to offshore banks, federal prosecutors face serious difficulties in obtaining records from those banks in both the investigative and trial stages of a prosecution. . . .  The procedures that must be undertaken in other countries in order to obtain the records generally take a considerable period of time to complete. . . .  The delays attendant in obtaining the records from other countries create both statute of limitation and Speedy Trial Act problems.  If the records are essential to the bringing of charges, the delay in getting the records might prevent filing an information or returning an indictment within the time period specified by the relevant statute of limitation.

Id. at 3578-79.

"[W]e do not resort to legislative history . . . [when] a statutory text . . . is clear." Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994).  Having found such clarity in section 3292, we see no reason to depart from the general rule here.

17

whole Act' but to 'look to the provisions of the whole law, and to its object and policy.'"  Pacheco, 225 F.3d at 154 (quoting Richards, 369 U.S. at 11 (internal quotation marks omitted)), cert. denied, 533 U.S. 904 (2001).

Here, the relevant "whole act" is the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, 98 Stat. 1837 (1984) (the "CCCA").  The CCCA amended the United States Code by adding, inter alia, 18 U.S.C. § 3292, the statute at issue on this appeal, and 18 U.S.C. § 3161(h)(9), a complementary provision of the Speedy Trial Act.

Section 3292, the statute we are examining, permits an extension of the statute of limitations if a proper application is "filed before return of an indictment."  18 U.S.C. § 3292(a)(1) (emphasis added).  The Speedy Trial Act provides for a period of time after the return of the indictment within which the trial of the defendant on criminal charges contained in that indictment must begin -- subject to a variety of exclusions.  See 18 U.S.C. § 3161(c)(1).  The provision added to the Speedy Trial Act by the CCCA was such an exclusion.  It permits a "period of delay, not to exceed one year," 18 U.S.C. § 3161(h)(9), to "be excluded . . . in computing the time within which the trial . . . must commence," id. § 3161(h), if the district court finds that "an official request, as defined in section 3292 of this title,

18

has been made for evidence" from a foreign country.  Id. § 3161(h)(9).[10]

Thus, when section 3292 is read alongside the CCCA's complementary amendment to the Speedy Trial Act, the significance of section 3292's phrase "before return of an indictment" is clear.  If the government anticipates a delay on account of a request for foreign evidence before indictment, it can seek to suspend the statute of limitations pursuant to section 3292.  If it anticipates such a delay after the indictment is returned, but before trial, it can separately apply for relief under section 3161(h)(9) of the Speedy Trial Act.  In other words, indictment serves as the dividing line between when the government can turn to section 3292 and when, instead, it must turn to section 3161(h)(9).  Consequently, and contrary to the government's contention, requiring that an application under section 3292 be filed before the statute of limitations expires does not render superfluous section 3292's requirement that the application be filed before the indictment is returned.[11]  That requirement

---

[10] This section does not require that the statute of limitations be suspended pursuant to section 3292 in order for the court to exclude time under the Speedy Trial Act.  It requires only that, after indictment, a party be able to demonstrate that it has made the type of request for foreign evidence "defined in section 3292."  18 U.S.C. § 3161(h)(9).

[11] Our interpretation of section 3292 is also consistent with internal Justice Department guidelines.  A manual advises federal prosecutors: "Make sure you file [the section 3292 application] before the statute runs; don't wait until the foreign country responds to the request."  Executive Office for United States Attorneys, Evidence for Experienced Criminal Litigators E-18 (1993).

19

remains fully relevant to the extent that it distinguishes between when it is appropriate for a prosecutor to apply for relief under section 3292 and when it is appropriate to seek relief under section 3161(h)(9).

C.  The Doctrine of Constitutional Avoidance

Neither party disputes the constitutionality of an interpretation of section 3292 that requires an application to be filed before the statute of limitations expires.  But Bourke argues that an interpretation of section 3292 that permits an application to be filed after the statute of limitations has run would violate the Ex Post Facto Clause and the Due Process Clause.  Because we reject that interpretation of section 3292, we need not determine whether Bourke's constitutional arguments have merit.  We note, however, that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." Jones v. United States, 529 U.S. 848, 857 (2000) (citations and internal quotation marks omitted).  Although we do not think that this principle alone requires the result we reach, this result allows us to avoid close analysis of what is, at least, a non-frivolous constitutional objection.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.

20